# Illinois Official Reports

## Appellate Court

---

### *People v. Downing*, 2019 IL App (1st) 170329

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALFRED DOWNING, Defendant-Appellant. |
| District & No. | First District, Third Division<br>No. 1-17-0329 |
| Filed | November 6, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CR-17866; the Hon. William T. O'Brien, Judge, presiding. |
| Judgment | Remanded with directions. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Christopher L. Gehrke, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Mari R. Hatzenbuehler, and Victoria E. Campbell, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Justices Howse and Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1      Defendant Alfred Downing was found guilty of possession of cannabis with intent to deliver. During his presentence investigation interview, he complained about his attorney's trial performance. The resulting presentence investigation report (PSI) then recited, in some detail, defendant's complaints about his trial counsel's representation. Then, at defendant's sentencing hearing, the State, arguing in aggravation, cited those very complaints in the PSI as evidence that defendant lacked remorse—that instead of accepting responsibility for his actions, he merely blamed his lawyer's poor performance. Defendant, for his part, never repeated his complaints in open court, in a written motion, or in any other informal communication with the trial court. Nor did the trial court make any inquiry of defendant.

¶ 2      The question here is whether the trial court was required to conduct a preliminary inquiry under *People v. Krankel*, 102 Ill. 2d 181 (1984), even though defendant did not, himself, raise any claims of ineffective assistance in open court and even though the claim was raised by the prosecutor, not defense counsel. Our initial answer, in a previous order, was no. We held that the trial court had no duty to conduct a *Krankel* inquiry because defendant did not direct his allegations to the trial court and thus failed to manifest any intent to litigate a *pro se* claim of ineffective assistance.

¶ 3      After defendant requested rehearing and upon further reflection, our answer is yes. The *Krankel* rule was fashioned by our supreme court to facilitate the accurate and efficient disposition of those claims of ineffective assistance of counsel that cannot be resolved based on the trial record alone. When, as here, it comes to the trial court's attention in open court in a posttrial proceeding that a defendant is claiming ineffective assistance by his trial counsel, the purposes of *Krankel* are best served by requiring an inquiry by the trial court, regardless of whether that information was communicated by defense counsel or the prosecutor.

¶ 4      While we mean no criticism of the trial court, which was faced with a unique set of circumstances, we hold that a *Krankel* inquiry should have been conducted. We remand for that purpose. On remand, defendant may also move to challenge his monetary assessments.

¶ 5                                   BACKGROUND

¶ 6      On October 6, 2015, Chicago police officers Cloherty and Ustaszewski (whose first names do not appear in the record) were in an unmarked car when a Chevy Cavalier drove past them. The windows of both cars were open, and Cloherty smelled burning cannabis coming from the Cavalier. He also noticed that neither the driver, Sharita Butler, nor the sole passenger, defendant, was wearing a seatbelt. The officers followed, and ultimately stopped, the Cavalier.

¶ 7      Butler got out of the car as the officers approached. Cloherty asked if she had any cannabis, and Butler handed him a partially smoked cannabis cigar. Ustaszewski approached the passenger side of the car and asked defendant if he had any cannabis. Defendant handed him a cannabis cigar inside an opened "blunt wrapper."

¶ 8      After removing defendant from the Cavalier, Ustaszewski found two clear plastic bags of cannabis between the center console and the passenger seat, and a large bag with smaller plastic bags of cannabis underneath the passenger seat. Cloherty found two large heat-sealed bags of cannabis and a scale in the trunk. The parties stipulated to the weight of the various bags, which totaled approximately 835 grams of cannabis.

¶ 9 Cloherty testified that defendant, who at the time was handcuffed and standing behind the Cavalier, said that "all the weed is mine." Ustaszewski also testified that defendant said "it's all mine" and "none of it is hers." Defendant did not sign a written statement, and he never touched or made any movements toward any of the bags of cannabis. The bags were not fingerprinted.

¶ 10 The trial court found defendant guilty of possessing 500 to 2000 grams of cannabis. After trial, defendant complained about the conduct of his trial counsel to the probation-department investigator. Those complaints were recorded in the PSI:

"I had three more witnesses I tried to get called and I also requested a new lawyer and that was denied. I also was supposed to take the stand and my lawyer didn't let me take the stand. They let the [p]olice say what they said and lie on [the] stand. The arresting officers were not the ones who transported me, no one read me my Miranda [r]ights— they didn't even have a chance to before I was transported. They also said I made a statement that the drugs were mine—Why would I say something like that—I'm on parole. They even said that the person driving the car tried to hop out of the car and get away, I was the passenger."

¶ 11 At the sentencing hearing, the trial court acknowledged receipt of the PSI. In aggravation, the State argued that those statements in the PSI showed that defendant lacked remorse:

"I would also address or direct your attention to page five of the PSI, the defendant's version of the offense, and suggest that it demonstrates an utter lack of remorse. He accuses the officers of lying on the witness stand. *He accuses his lawyer of not letting him take the stand to testify when in fact you inquired, I recall, of his intention to either testify or not, and he indicated that he did not wish to yet. He is now blaming his lawyer for the outcome of the case.*" (Emphasis added.)

¶ 12 After hearing arguments in aggravation and mitigation, the trial court asked defendant, "[I]s there anything you wish to say before I impose sentence?" Defendant answered, "No." Defendant did not mention his allegations against counsel at any time during the sentencing hearing, and the trial court never asked defendant to elaborate on his claims or their alleged factual basis. The trial court found that defendant was a Class X offender by background and sentenced him to seven years in prison.

¶ 13                                                            ANALYSIS
¶ 14                                                                  I
¶ 15 Defendant argues that the trial court was required to conduct a *Krankel* inquiry into the allegations of attorney incompetence that he expressed to the probation department during his PSI interview. Our review is *de novo. People v. Moore*, 207 Ill. 2d 68, 75 (2003).

¶ 16                                                                  A
¶ 17 There is no dispute that at least some of these allegations sufficed, in terms of their *content*, to "raise[ ] a *pro se* posttrial claim of ineffective assistance of counsel." See *People v. Ayres*, 2017 IL 120071, ¶ 11. Defendant said that his lawyer failed to call three witnesses, that he had wanted to replace his lawyer, and that counsel did not let defendant testify in his own defense. If the mere words "ineffective assistance of counsel" are enough to trigger *Krankel* (see *id.* ¶ 26), then these far more specific claims easily suffice—in content.

¶ 18    But the question here is not the content of the claims but the manner in which they were received by the trial court and by whom they were delivered. Defendant filed nothing with the court regarding ineffective assistance, nor did he utter any such words in open court. Rather, defendant's complaints about his lawyer's representation first appeared in the PSI, and then were communicated in open court by the State in aggravation at the sentencing hearing. The question thus presented is whether allegations of ineffective assistance, attributed to the defendant but presented to the trial court in open court by someone other than the defendant, require the court to conduct a *Krankel* inquiry.

¶ 19    We have already held that when *defense counsel* informs the court that the defendant has made out-of-court complaints about counsel's representation, a *Krankel* inquiry is required. In *People v. Jackson*, 243 Ill. App. 3d 1026, 1034 (1993), defense counsel sought to withdraw posttrial, informing the trial court that defendant had filed an Attorney Registration and Disciplinary Commission (ARDC) complaint against counsel that contained " 'allegations or innuendos of ineffectiveness.' " That is to say, defense counsel was not speaking as defendant's mouthpiece—he did not tell the court that his client had *asked* him to raise ineffectiveness claims—but rather, defense counsel merely communicated statements made by defendant in an out-of-court ARDC complaint. That was enough, we held, to trigger the *Krankel* inquiry. *Id.* at 1035-36.

¶ 20    Our facts are hardly distinguishable from those in *Jackson*. Again, we face a situation where the defendant has made an out-of-court statement complaining of trial counsel's representation, chronicled in a written document whose content was then communicated to the trial court at a posttrial proceeding. Instead of an ARDC complaint, we have here a PSI, which is far more germane to a defendant's posttrial proceedings than an unrelated complaint to the state's bar disciplinary body—and which the trial court is required and presumed to have read. See 730 ILCS 5/5-4-1(a)(2) (West 2018); *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 20.

¶ 21    And instead of defense counsel, here it was the prosecutor who brought defendant's claims to the trial court's attention. But we can think of no reason why it should make a difference that the issue was raised by the State. A prosecutor does not speak for the defendant, of course, but neither was defense counsel speaking at the behest of his client in *Jackson*; counsel was merely relating something that had come to his attention independently, thus prompting his motion to withdraw from the case. *Cf. People v. Rhodes*, 2019 IL App (4th) 160917, ¶ 17 (counsel submitted posttrial motion alleging ineffective assistance at request of defendant). In that context, it should make no difference which lawyer alerted the trial court to the issue.

¶ 22    It would thus seem to be a logical extension of *Jackson* to hold that, because the State emphasized in open court that defendant had complained about his trial representation and specifically directed the trial court to the page of the PSI in which those complaints appeared, the trial court had a duty under *Krankel* to inquire with defendant as to the substance of these claims.

¶ 23    But put *Jackson* to the side for a moment; that decision was handed down over two decades ago, during which time our supreme court has written extensively on *Krankel*, and appellate case law has significantly developed. And we are obviously not bound by that appellate decision, in any event. As we explain below, the holding in *Jackson*, and our extension of that holding to this case, is warranted by more recent case law, as well.

- 4 -

When a defendant raises a *pro se*, posttrial claim of ineffective assistance of counsel, the trial court must conduct " 'some type of inquiry into the underlying factual basis' " of the claim. *Ayres*, 2017 IL 120071, ¶ 11 (quoting *Moore*, 207 Ill. 2d at 79). The purpose of this preliminary *Krankel* inquiry is a "narrow" one: to determine whether the defendant's allegations show "possible neglect of the case" by counsel and thus warrant the appointment of new counsel to litigate the defendant's *pro se* claims. *Ayres*, 2017 IL 120071, ¶ 11; *People v. Patrick*, 2011 IL 111666, ¶ 39; *Moore*, 207 Ill. 2d at 78.

To raise a posttrial claim of ineffective assistance, "[a] *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention." (Internal quotation marks omitted.) *Ayres*, 2017 IL 120071, ¶ 11. Any method that a *pro se* defendant can muster will suffice. The defendant may submit a written posttrial motion (see *Patrick*, 2011 IL 111666, ¶ 29), address the judge orally in open court (see *People v. Banks*, 237 Ill. 2d 154, 213-14 (2010)), or send the judge an informal letter or note (see *People v. Munson*, 171 Ill. 2d 158, 200 (1996)). Or the defendant may speak through counsel, either by drafting a written posttrial motion and asking counsel to submit it (see *Rhodes*, 2019 IL App (4th) 160917, ¶ 17) or by directing counsel to raise the issue orally. Either way, counsel is acting at the defendant's behest, passing along allegations that were meant, by the defendant, for the judge's ears.

In all of these examples, whether the defendant speaks to the judge directly or through counsel, it is nonetheless *the defendant* who has brought the claim to the trial court's attention. By some intentional and affirmative step, the defendant has directed his allegations *to the judge*. In doing so, the defendant has thus manifested an intent to put counsel's competence at issue in the litigation.

Indeed, in the vast majority of cases, the trial judge will learn of any dissatisfaction with trial counsel's performance from the defendant, not some third party. For that reason, the trial judge will know that the defendant intends to litigate the issue in court. In these typical circumstances, a *Krankel* inquiry is obviously required. That much should be common ground for everyone. (Indeed, it is the crux of the State's position.) So in the vast majority of cases, it will be obvious to trial judges that the duty to conduct a *Krankel* inquiry has been triggered— by allegations that the defendant, through whatever means, has directed to the court.

Now suppose that a defendant has complained about his lawyer's performance outside of court. Obviously, if the trial court is never made aware of those complaints, *Krankel* requires nothing of the court. A trial judge cannot read minds and cannot rely on nonrecord evidence. But what about a PSI? The presentence investigation process takes place entirely outside of the courtroom, but as noted above, the trial court is required to consider it and presumed to have read it. See 730 ILCS 5/5-4-1(a)(2) (West 2018); *Sauseda*, 2016 IL App (1st) 140134, ¶ 20.

So if a defendant's complaints about his lawyer's trial representation are memorialized in the PSI, does the trial court have a duty under *Krankel* to inquire further? In *People v. Harris*, 352 Ill. App. 3d 63, 71 (2004), we said no. The defendant there complained, during his PSI interview, that " '[w]hen I went to court, my P.D. didn't tell me we were going to trial, she said it was for a Motion. Well, it was trial and I didn't get to call any of [*sic*] witnesses (my grandmother, my uncle and a cousin) who were there that day and saw everything.' " *Id.* We held that, because this statement was "contained only in defendant's presentence investigation

report," it did not "bring to the court's attention" a *pro se* claim of ineffective assistance and thus did not require the trial court to conduct a preliminary *Krankel* inquiry. *Id.* at 71-72.

¶ 31    We will have more to say about *Harris* later. But for now, suppose that things proceed one step further than *Harris*. That is, not only do defendant's complaints about his trial representation find their way into a PSI, but one of the attorneys *recites* those complaints to the trial court in a posttrial proceeding? Here, during sentencing, the State directed the trial court to the specific page of the PSI where defendant's complaints about his trial lawyer appeared and then discussed them in some detail, including defendant's complaint that his lawyer would not let him testify, as well as summarizing that defendant was "now blaming his lawyer for the outcome of the case." And of course, the PSI itself contained the additional claim from defendant that his lawyer failed to call three witnesses on defendant's behalf.

¶ 32    Is that enough to trigger a preliminary *Krankel* inquiry? The State says no, that a *Krankel* inquiry is required only when *the defendant* conveys an allegation of ineffective assistance *to the trial court*.

¶ 33    It's fair to say that alleging counsel's deficiencies to the *judge* is, in one sense, different in kind than alleging them to anyone else. For all a judge can know, a defendant who never raises the issue in court may have just been blowing off steam when he complained, out of court, about his attorney. (As defendants routinely do.) Or the defendant may have had second thoughts, for whatever reasons, about pursuing the claim at that time.

¶ 34    Directing the relevant allegations *to the court* is how the defendant (like any other litigant) manifests the intent to do so; by the same token, it is how the judge distinguishes a defendant who is trying to raise an issue from a litigant who is merely venting. Thus, the State argues, the trial court is not required to conduct a *Krankel* inquiry unless the defendant directs the allegations about counsel's performance to the court. That did not happen here; defendant remained mute, and thus, says the State, *Krankel* required nothing of the trial court.

¶ 35    While the State's position is not without merit, we think the better rule is to require a preliminary *Krankel* inquiry in this context—that is, when the trial court is made aware in open court that a defendant has made complaints about his trial representation. To explain why, we must turn to the rule's guiding purposes.

¶ 36    Our supreme court has interpreted its *Krankel* rule liberally over the years "to promote consideration of *pro se* ineffective assistance claims in the trial court and to limit issues on appeal." *Patrick*, 2011 IL 111666, ¶ 41. The point of the rule is to ensure that any potential issues regarding counsel's competence are heard promptly, while the relevant facts and circumstances are "much clearer in the minds of all involved" than they would be "years later on appeal." *Ayres*, 2017 IL 120071, ¶ 21.

¶ 37    The rule also encourages the trial court to exercise its fact-finding abilities and "create the necessary record for any claims raised on appeal." *People v. Jolly*, 2014 IL 117142, ¶ 38. The lack of an adequate record would preclude review on direct appeal and so require the claim to be heard, if at all, in a postconviction petition (*Moore*, 207 Ill. 2d at 81), with all the additional delay, deterioration of memory, and potential loss of evidence that entails.

¶ 38    A sensible rule of procedure will encourage the resolution of claims where and when they are most likely to be resolved correctly and efficiently. *Krankel* is just such a rule. Our supreme court created the *Krankel* procedure to improve the efficiency and, above all, the accuracy of

the judicial process for those allegations of ineffective assistance of counsel that cannot be resolved based on the trial record alone.

¶ 39 These goals will not always align with a defendant's own interests. Improving the accuracy (or speed) of the judicial process will not help a defendant unless he has a meritorious claim, and experience teaches that the overwhelming majority of ineffective-assistance claims will not merit relief. But the justice system, in its search for the truth, *always* has a paramount interest in getting it right, no matter which party the right result favors. The *Krankel* rule, in other words, is not a rule crafted exclusively for the benefit of defendants. It is a rule crafted, at least as much, to serve the judiciary's own interests in accurate and efficient decision-making. Those interests, and not merely the *pro se* defendant's intent, should guide our interpretation of the rule.

¶ 40 The goals of accuracy and efficiency would best be served if trial judges were required to conduct preliminary inquiries whenever a defendant's posttrial allegations of attorney incompetence have been brought to the trial court's attention in open court. Once the judge has been made aware of such allegations, the judge has good reason to believe that a claim of ineffective assistance is likely to be raised at some point—if not in the trial court proceedings then later, on direct appeal and/or collateral review.

¶ 41 If trial judges do not to inquire into allegations of which they are aware, then some untold number of claims will inevitably be put off until later and eventually adjudicated in other, less-than-optimal, forums. But the whole point of *Krankel* is that we should *not* kick the can down the road. Rather, we should maximize the number of claims that are heard when and where they are most likely to be resolved correctly and efficiently. And that means in the trial court, as soon as the defendant's posttrial allegations of attorney incompetence have been made known to the judge. Whenever such have been brought to light—by the defendant or another party—the trial court should conduct a *Krankel* inquiry.

¶ 42 Simply put, because the point of *Krankel* is as much about ensuring accurate and efficient decision-making as it is protecting a defendant's rights, the defendant's manifested intent to raise the issue to the trial court should not be the *only* way that *Krankel* is triggered.

¶ 43 And as a practical matter, if it should happen that the defendant does *not* wish to raise an ineffectiveness claim that was brought to the trial court's attention by someone else, the defendant can simply say so. The trial court's preliminary *Krankel* inquiry would end almost as soon as it began if the trial court inquired of the defendant, and the defendant disavowed the out-of-court comments attributed to him.

¶ 44 For these reasons, we hold that a preliminary *Krankel* inquiry was required here, after the State, at the sentencing hearing, cited and discussed defendant's complaints in his PSI about his trial representation.

¶ 45 We should emphasize that our holding is limited to the situation where the allegations of ineffectiveness came, albeit indirectly, from the defendant's mouth. It was not someone else's opinion that ineffectiveness had occurred; it was defendant's, even if someone else communicated defendant's words to the trial court. That distinguishes this matter from those scenarios where defense attorneys allege their *own* ineffectiveness, speaking for themselves and not as a mouthpiece to transmit their client's *pro se* complaints. See, *e.g.*, *People v. Willis*, 2013 IL App (1st) 110233, ¶¶ 62, 73 (*Krankel* inquiry required in that context); *People v. Bates*, 2018 IL App (4th) 160255, ¶ 102 (*Krankel* inquiry not required in that context), *appeal allowed*, No. 124143 (Ill. Jan. 31, 2019). The applicability of *Krankel* in that context is not

before us, and we need not consider it; we will await the supreme court's guidance in the *Bates* case.

¶ 46 Nor are we holding that the inclusion of defendant's complaints in the PSI, standing alone, is enough to trigger *Krankel*. We are not answering that thornier question either way. We do not need to because we have the additional fact here that the prosecution highlighted these complaints in open court, unquestionably calling them to the trial court's attention.

¶ 47                                                    C

¶ 48 The State claims that existing case law requires us to reach a different conclusion. But *People v. Taylor*, 237 Ill. 2d 68 (2010), provides no support for its position. That decision involved not the manner in which the trial court received the information but whether the *substance* of the statements was sufficient to inform the court of possible ineffective assistance. *Id.* at 77. In a "rambling" statement in allocution (*id.*), the defendant there told the trial court that he regretted the decision not to accept a plea bargain that would have given him three years' imprisonment, indicating that he " 'had no idea' " that he was facing a range of 6 to 30 years as a Class X offender if convicted (*id.* at 73-74). The defendant never mentioned his lawyer, much less his lawyer's performance, and thus the supreme court held that his statements were not sufficient to trigger a *Krankel* inquiry.

¶ 49 We do not face that situation here. The State does not dispute that the substance of defendant's complaints—specifically identifying his trial counsel's alleged failures to call certain alibi witnesses and allow defendant to testify—were enough to trigger *Krankel*. They plainly were.

¶ 50 The State also cites *Harris*, 352 Ill. App. 3d at 71-72, which we discussed earlier, in which this court held that a defendant's complaints about his lawyer, chronicled in the PSI, were not enough, by themselves, to bring his claims to the attention of the trial court to trigger *Krankel*. As we noted before, that case is distinguishable because there the trial court *only* had defendant's statements in the PSI, whereas here, the trial court had both the PSI's statements and the State's comments at sentencing that referenced those complaints in the PSI.

¶ 51 But that distinction aside, defendant further notes that the court in *Harris* explicitly relied on *People v. Reed*, 197 Ill. App. 3d 610 (1990), for its holding that the complaints raised in the PSI were insufficient. See *Harris*, 352 Ill. App. 3d at 72. So it is necessary to consider *Reed*, too.

¶ 52 In *Reed*, 197 Ill. App. 3d at 612, the defendant expressed his opinion in the PSI that " 'he was poorly represented at his trial and said he plans to file an Appeal.' " And at sentencing, the defendant told the trial court that " 'most of the stuff in my case here I'm not sure you are aware of it, but it wasn't brought up. You know, there is a few people that don't even know me that can verify that I was [in] Cook County at the time.' " *Id.* at 611. This court rejected the defendant's claim that a *Krankel* inquiry was required, writing as follows:

> "Defendant's argument assumes that allegations of ineffective assistance of counsel were properly presented to the trial court. Such is not the case, however, as defendant never referred to his trial counsel in his oral comments at his sentencing hearing and only vaguely commented on some possible alibi witnesses. Although there is a mention in his presentence report that he felt he was 'poorly represented,' there are no

allegations supporting that opinion or supporting an ineffective assistance of counsel claim." *Id.* at 612.

¶ 53 So the facts in *Reed* are almost indistinguishable from our case; there was a reference in the PSI to defendant claiming he was "poorly represented," and then in open court, the trial court heard defendant's claims—from defendant himself, no less—that certain alibi witnesses existed who were never called to testify. See *id.* at 611-12. If we were persuaded that this 1990 decision accurately stated the law today, we would follow it and reach a different decision. But it does not.

¶ 54 *Reed*, as detailed above, was premised on the lack of factual specificity in defendant's complaints. The court held that defendant's complaints were not properly presented, as his in-court comment about alibi witnesses was "vague[ ]" and the complaint in his PSI that he was " 'poorly represented' " contained no elaboration whatsoever. *Id*. at 612.

¶ 55 But while *Reed* may have been consistent with prevailing law at the time, even the State concedes that its reasoning cannot survive the 2017 decision from our supreme court in *Ayres*, 2017 IL 120071, ¶ 24, which held that a bare allegation of "ineffective assistance of counsel," without more, is sufficient to warrant a preliminary *Krankel* inquiry. No factual specificity is required; indeed, the point of the preliminary *Krankel* inquiry is to *develop* that factual specificity to determine whether the claim is sufficient to show possible neglect of the case, thus warranting the appointment of new counsel to independently present the ineffectiveness claim. *Id.* ¶ 19. It is hard to imagine that the defendant's oral statement to the court in *Reed* that certain alibi witnesses were not called at his trial would not have sufficed to trigger a preliminary *Krankel* inquiry today, post-*Ayres*.

¶ 56 That brings us back to *Harris*, 352 Ill. App. 3d at 71-72, where we held that a preliminary *Krankel* inquiry was not required when the PSI contained this statement from the defendant: " 'When I went to court, my P.D. didn't tell me we were going to trial, she said it was for a Motion. Well, it was trial and I didn't get to call any of [*sic*] witnesses (my grandmother, my uncle and a cousin) who were there that day and saw everything.' " *Id.* at 71. Would *Harris*, a 2004 decision, be decided the same way today? Certainly not based on the case on which it exclusively relied, *Reed*. The allegations in *Harris* were more than sufficient to satisfy the lenient standard set by our supreme court in *Ayres*.

¶ 57 But whatever the viability of *Harris* in light of *Ayres*, suffice it for our purposes to say that *Harris* is distinguishable from our facts. Here, unlike in *Harris*, defendant's criticisms of his trial counsel were expressly brought to the trial court's attention in open court. Thus, we need not decide whether the statements contained in the PSI in this case, standing alone, would warrant a preliminary *Krankel* inquiry. We leave that question for another day.

¶ 58 The State also cites *People v. Cunningham*, 376 Ill. App. 3d 298 (2007). Defense counsel sought to withdraw as counsel because the defendant had filed an ARDC complaint against him, but counsel said nothing of ineffective assistance of counsel—just the mere existence of the ARDC complaint. And the trial court allowed counsel to withdraw for this reason, whereupon another lawyer represented defendant for the duration of posttrial proceedings. *Id.* at 300-01.

¶ 59 We found no error in the court's failure to undertake a preliminary *Krankel* inquiry. First and foremost, the trial court granted defense counsel's motion to withdraw and allowed new counsel to represent the defendant, which ultimately is the goal of the preliminary *Krankel* inquiry—to determine whether the claims of ineffectiveness are sufficient to warrant the

appointment of new counsel to pursue those claims. In other words, the defendant received all that a preliminary *Krankel* inquiry could have given him, anyway. Thus, "any required inquiry into the ARDC complaint" was "render[ed] moot" and "irrelevant." *Id.* at 306.

¶ 60 We also wrote in *Cunningham* that "[a] trial court's mere awareness of the existence of the complaint, without more, is insufficient to effectively raise a claim of ineffective assistance." *Id.* at 305. Because there was no mention in *Cunningham* of the substance of the ARDC complaint the defendant had filed—no mention of alleged ineffective assistance, as opposed to some other problem with his trial attorney—that decision could square with our holding today. To the extent that *Cunningham* was suggesting that the mere awareness of a claim of *ineffectiveness assistance* is not enough, without more specificity, that comment is plainly incorrect in light of *Ayres*. *Ayres*, 2017 IL 120071, ¶¶ 19, 24 (noting that supreme court case law had consistently held that "a defendant need only bring his claim to the court's attention" and that "[a] defendant need only bring his claim to the court's attention, posttrial, whether orally or in writing").

¶ 61 In sum, while we initially agreed with the State that the case law on which it relied compelled a ruling in the State's favor, on reconsideration we find otherwise. That case law is either inapposite or inconsistent with current, controlling case law.

¶ 62 D

¶ 63 At oral argument, the State raised an entirely new argument, one it did not raise either in its initial brief or its answer to defendant's rehearing petition. As a general rule, the State argued, a trial court may not intrude into or interfere with the attorney-client relationship. The *Krankel* procedure creates a unique and limited exception to this general rule: An inquiry into the basis of a defendant's dissatisfactions with counsel intrudes into the attorney-client relationship, but that intrusion is warranted when—and only when—the defendant has manifested an intent to put counsel's competence at issue by personally directing allegations of ineffective assistance to the trial court. Thus, the trial court's duty to conduct a preliminary *Krankel* inquiry is and should be triggered only in those limited circumstances.

¶ 64 Apart from coming late in the day, the State's novel theory is not convincing. As its only authority for this line of argument, the State directed us to *People v. Jocko*, 239 Ill. 2d 87 (2010). The supreme court held in *Jocko* that a trial court has no duty to inquire into a defendant's *pro se* allegations of ineffective assistance before the end of trial. *Id.* at 93. Before a defendant has been convicted, the supreme court explained, he cannot possibly show that his defense was prejudiced by counsel's alleged deficiencies. *Id.* The holding of *Jocko* was thus based on the elements of a *Strickland* claim and when a defendant could ever be in a position to establish them, not on any perceived need to protect the attorney-client relationship from an unwarranted intrusion. In fact, the supreme court's opinion in *Jocko* does not mention the attorney-client relationship even once.

¶ 65 That said, it is perhaps no accident that the State turned to *Jocko* to support its theory. As we noted, *Jocko* dealt with a pretrial allegation of ineffective assistance. Conducting a *Krankel* inquiry in *that* context—during trial preparations, when counsel and client are actively trying to hammer out the theory of defense—undoubtedly *would* threaten irreparable harm to the attorney-client relationship. It is hard to imagine how counsel and client could continue to work together to build a meaningful consensus of their own on matters of trial strategy once the trial judge, of all people, has weighed in on their disagreements. Thus, protecting the attorney-client

relationship is one very good reason not to conduct a *Krankel* inquiry pretrial. Not a reason the supreme court relied on, or even mentioned, in *Jocko* but a good reason all the same.

¶ 66 That reason, however, does not apply in this case, where defendant's *pro se* allegations of ineffective assistance were presented to the judge in the posttrial proceedings. In this context, a *Krankel* inquiry will not hinder the attorney-client relationship at all. The trial is over; strategic disagreements have played themselves out; there is no need to decide, at this point, whether to call an alibi witness, argue self-defense, request a jury instruction, or anything else of the sort. All that remains is to file a posttrial motion to preserve any potential errors for appeal (assuming that counsel has not already done so by the time the defendant alleges ineffectiveness) and/or to argue in mitigation at sentencing. At this point, an inquiry into the defendant's complaints about the defense presented at trial will not impede counsel's ability to carry on with what remains of the representation.

¶ 67 In all of our supreme court's *Krankel* cases, there is only one mention of the attorney-client relationship. That was in *People v. Pecoraro*, 144 Ill. 2d 1, 14-15 (1991), where the supreme court held that the trial court was not required to conduct a *Krankel* inquiry into allegations of ineffective assistance directed at *private* counsel. In so holding, the supreme court said that "[d]efendant and his counsel were the only parties who could have altered their attorney-client relationship." *Id.* at 15. Because Pecoraro had the means and the wherewithal to hire his own attorney, he could have simply retained a new attorney to represent him in his posttrial proceedings if he was dissatisfied with trial counsel's performance. *Id.* The trial court had no authority "to advise or exercise any influence or control over the selection of [private] counsel" by Pecoraro. *Id.* And conducting a *Krankel* inquiry would have done precisely that. *Id.*

¶ 68 In the years since *Pecoraro*, the appellate court has reached conflicting conclusions about the scope of its apparent holding that the *Krankel* rule does not apply (or does not fully apply) to private counsel. See, *e.g.*, *People v. Shaw*, 351 Ill. App. 3d 1087, 1092 (2004) (*Krankel* does not apply to private counsel); *People v. Johnson*, 227 Ill. App. 3d 800, 810 (1992) (private counsel not automatically excluded from *Krankel* rule). And the supreme court has thus far declined to revisit the question. See *Taylor*, 237 Ill. 2d at 77. But whatever the proper scope of *Pecoraro*'s holding, it surely does not apply here, where defendant was represented by a public defender, not by private counsel.

¶ 69 In short, we see no merit and no support in our supreme court's *Krankel* precedents for the State's claim that conducting a *Krankel* inquiry in this case would have impermissibly intruded into the attorney-client relationship.

¶ 70 E

¶ 71 For all of these reasons, we remand this cause to the trial court for a preliminary *Krankel* inquiry. In conducting that inquiry, the trial court should determine whether defendant wishes to pursue his allegations in a *Krankel* proceeding. If he does wish to pursue them, the trial court should determine whether the allegations reveal possible neglect of the case by counsel. If he does not, no further action is required from the trial court. We express no view on the merits of defendant's allegations.

¶ 72                                                        II

¶ 73         Defendant also claims, for the first time on appeal, that the $5 Electronic Citation Fee was improperly assessed. Illinois Supreme Court Rule 472(a)(1), (2) (eff. May 17, 2019) provides that the circuit court retains jurisdiction to correct certain sentencing errors, including errors in the imposition of monetary assessments or in the application of *per diem* credits, at any time following judgment. And when, as here, a criminal case was pending on appeal as of March 1, 2019, and a party raised sentencing errors covered by Rule 472 for the first time on appeal, "the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 472(e) (eff. May 17, 2019). Thus, under Rule 472(e), defendant must first file a motion in the circuit court requesting the correction of the errors alleged here. See *People v. Whittenburg*, 2019 IL App (1st) 163267, ¶ 4; *People v. Loggins*, 2019 IL App (1st) 160482, ¶ 131. Since this case must be remanded anyway for a *Krankel* inquiry, defendant is free to file his motion at that time, if he has not already done so.

¶ 74                                                  CONCLUSION

¶ 75         For these reasons, we remand for the trial court to conduct a preliminary *Krankel* inquiry into defendant's allegations of ineffective assistance of counsel. On remand, defendant may also file a motion challenging his monetary assessments.

¶ 76         Remanded with directions.