2024 IL App (2d) 230225-U
No. 2-23-0225
Order filed February 22, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-345 |
| CORY M. WOLF, | ) ) | Honorable James S. Cowlin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court failed to recognize that defendant's statements during allocution raised the possibility that he rejected the State's plea offer and went to trial because of deficient advice from defense counsel. Accordingly, we remand this case for the trial court to properly inquire into the factual basis of defendant's ineffective-assistance claim.

¶ 2    Following a bench trial in the circuit court of McHenry County, defendant, Cory M. Wolf, was found guilty of attempted aggravated robbery (720 ILCS 5/8-4(a) 18-1(b)(1) (West 2020)), aggravated battery (*id.* § 12-3(a)), and criminal damage to property (*id.* § 21-1(a)(1)). The trial court sentenced defendant to concurrent prison terms of 10 years for attempted aggravated robbery

and 6 years for aggravated battery. For criminal damage to property, the trial court sentenced defendant to 364 days in the county jail, with credit for 364 days served before sentencing. Defendant argues on appeal that the trial court failed to conduct a proper inquiry into his *pro se* posttrial claim of ineffective assistance of counsel. We remand for further proceedings.

¶ 3                                                    I. BACKGROUND

¶ 4      Defendant was represented successively by two attorneys from the same private law firm (first counsel and second counsel, respectively). First counsel represented defendant for the bulk of the pretrial proceedings. Second counsel represented defendant for the remaining pretrial proceedings, the trial, and the posttrial proceedings. Likewise, the judge who presided over most of the pretrial proceedings (Judge Michael E. Coppedge) did not preside over defendant's trial. The case was reassigned to Judge James S. Cowlin less than three months before trial. At the time of the reassignment, the case had been pending for almost three years. Judge Cowlin presided over the case for the remaining pretrial, trial, and posttrial proceedings.

¶ 5      Before trial, first counsel advised the trial court that he was looking into the possibility of defendant being admitted to the circuit court of McHenry County's mental health court program. See generally 730 ILCS 168/1 *et seq.* (West 2020). Thereafter, the trial court granted numerous continuances while the defense pursued that possibility. Ultimately, the matter proceeded to trial before Judge Cowlin on May 4, 2023. Before hearing testimony, the trial court asked whether any offers for a negotiated resolution of the charges had been made. The State responded that it had made an offer under which it would recommend a five-year prison term. Defendant confirmed that it was his personal decision to reject the offer and proceed to trial.

¶ 6      At trial, the State presented evidence that, in April 2020, as Drake Allen Wash-Prado approached his parked vehicle in a pharmacy lot, defendant came up and punched him in the face.

During the ensuing scuffle, defendant threw Wash-Prado to the ground and demanded his keys. Defendant said that he had a gun, and he threatened to shoot Wash-Prado. During the altercation, Wash-Prado's vehicle was damaged. The trial court found defendant guilty of all counts except one.

¶ 7     In his posttrial motion, defendant argued that the State failed to prove his guilt beyond a reasonable doubt. The trial court denied the motion, and the matter proceeded to sentencing. The presentence investigation report established that defendant had an extensive criminal history including convictions in Illinois and other jurisdictions for, *inter alia*, theft, burglary, aggravated battery, and prohibited possession of a firearm. As evidence in mitigation, defendant submitted two letters. The first was from Megan Garcia, a licensed clinical psychotherapist, who examined defendant to assess his mental health at the time of the offense. According to the letter, defendant "requested feedback of the possibility that he had a negative reaction to Alprazolam (Xanax) during his self reported manic episode at the time of the offense." Garcia noted that she reviewed medical records from 2017 through 2019 indicating that defendant was diagnosed with bipolar 1 disorder, antisocial personality disorder, intermittent explosive disorder, and post-traumatic stress disorder. Garcia concluded that there was no clinical evidence that defendant had negative side effects, such as increased mania, from his use of Alprazolam. Garcia further concluded that the offense was "more likely a result of untreated mental health symptoms." The second letter, from Ruba Ghalayni, M.D., stated, "[Defendant] was seen in my office on 5/9/2023. He was given refills of all his medications."

¶ 8     During his allocution, defendant stated:

> "So I'm sorry to the Court and my victim for what happened. When I went to trial, it was my understanding with my attorney—I had [first counsel] all the way up until, like,

a week before my trial. And it was my understanding he was going to show the Court my medical records and the psychological report that we got during the time I was incarcerated. It was never brought up.

I've got the records, *** that show ten days before I caught this case, I went to the emergency room and they contacted crisis because I didn't have my meds. And then seven days before this crime, they gave me Xanax and a personal physician, because I couldn't get into a psych doctor due to the pandemic. It was, like, March 2020.

So she gave me Xanax, but you're not supposed to give Xanax to people that are bipolar without a mood stabilizer, it says, because it does cause aggression, which can lead, um [*sic*], legal trouble.

So that's where we was [*sic*] coming to court for, during the deal, but then I get him, [second counsel], and nothing's said about it. So otherwise, I never would have went [*sic*] to trial."

¶ 9 The trial court asked second counsel whether Garcia's letter was the medical documentation to which defendant had referred. Second counsel confirmed that it was. The trial court then addressed defendant as follows:

"As to whether *** [first counsel] or someone from [his] firm was going to tender some medical record prior to trial, during the pendency of the proceeding, or the number of years that it was in court, would certainly be a matter of strategy. I don't see it as—I don't know what [defendant] is trying to raise by saying that the report wasn't tendered to the Court prior. The Court has it now.

But in terms of whether or not there was anything ineffective by counsel for not tendering that, that would be a matter of trial strategy, *** as to whether or not

[defendant]—although he hasn't expressly raised an ineffective assistance of counsel [claim], but he indicated he wasn't, apparently, pleased, my words, not his, that the report wasn't tendered. But it would be a matter of strategy, so I find that that argument, if he is making an argument toward ineffective assistance, has no merit."

¶ 10    Defendant filed this timely appeal.

¶ 11                                    II. ANALYSIS

¶ 12    Defendant argues that, during his allocution, he raised a claim of ineffective assistance of counsel, obligating the trial court to conduct an inquiry pursuant to the common-law procedure developed in *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny to determine whether to appoint new counsel for defendant. As our supreme court explained in *People v. Roddis*, 2020 IL 124352, ¶¶ 35-36:

"Under the common-law procedure, a *pro se* defendant is not required to file a written motion but need only bring his or her claim to the trial court's attention. [Citation.] New counsel is not automatically appointed in every case when a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel. [Citation.] Rather, when a defendant makes such a claim, the court should first examine the factual basis of the defendant's claim. [Citation.] If the court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. [Citation.] However, if the allegations show possible neglect of the case, new counsel should be appointed. [Citation.]

New counsel would then represent the defendant at the hearing on the *pro se* ineffective assistance of counsel claim. Appointed counsel can independently evaluate the

claim and avoid the conflict of interest that trial counsel would have in trying to justify his or her own actions contrary to the defendant's position. [Citation.]"

The *Krankel* procedure "encourages the trial court to exercise its fact-finding abilities and 'create the necessary record for any claims raised on appeal.' " *People v. Downing*, 2019 IL App (1st) 170329, ¶ 37 (quoting *People v. Jolly*, 2014 IL 117142, ¶ 38).

¶ 13    The Fourth District has explained the factors a reviewing court should consider in determining the adequacy of the trial court's inquiry:

> "A reviewing court should consider three factors when determining whether a *Krankel* inquiry was sufficient: (1) whether there was some interchange between the trial court and defense counsel regarding the facts and circumstances surrounding the allegedly ineffective representation, (2) the sufficiency of defendant's *pro se* allegations of ineffective assistance, and (3) the trial court's knowledge of defense counsel's performance at trial and the sufficiency of the defendant's allegations on their face. [Citation.] None of these factors are mandatory, and no bright-line rule exists about what is a sufficient inquiry and what is not. The Illinois Supreme Court specifically used permissive rather than mandatory language in describing the utilization of these factors. [Citation.]" *People v. Schnoor*, 2019 IL App (4th) 170571, ¶ 71.

¶ 14    Whether the trial court conducted a proper preliminary *Krankel* inquiry is a question of law, which is reviewed *de novo*. *Roddis*, 2020 IL 124352, ¶ 33.

¶ 15    Turning to the merits, defendant argues that the trial court's preliminary *Krankel* inquiry was misdirected and incomplete. We agree. The trial court identified the issue as whether second counsel's decision not to introduce defendant's mental health records at trial was a proper strategy. However, defendant's remarks in allocution suggest a claim of ineffectiveness that was based not

merely on second counsel's failure to introduce the records into evidence. As defendant observes, he stated during allocution that, had he known his mental health records were not going to be admitted into evidence at trial, he would have accepted the State's plea offer rather than proceed to trial. Under that offer, he would have received a prison sentence of 5 years instead of the 6-year and 10-year sentences he received after trial. We agree with defendant that the circumstances suggest the possibility that he was not properly advised about viable trial strategies when he decided to reject the State's plea offer. Criminal defendants are entitled to the effective assistance of counsel during plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). A claim of ineffective assistance can be based on deficient advice from counsel that causes the defendant to reject a plea offer more favorable than the ultimate outcome after proceeding to trial. See *id.* at 161, 174 (ineffective-assistance claim was established where the defendant, charged with assault with intent to murder, rejected a plea offer based on defense counsel's advice—which the parties conceded was constitutionally deficient—that because the defendant shot the victim below the waist, the State would be unable to prove intent to murder.)

¶ 16    The State does not dispute that defendant's remarks during allocution triggered the trial court's duty to conduct a *Krankel* hearing. However, the State argues that the trial court satisfied that duty. According to the State, Judge Cowlin properly rejected defendant's claim on the merits, without appointing new counsel, because Judge Cowlin was "intimately familiar with the lengthy history of the case" and thus capable of concluding, based on his own knowledge of counsels' performance, that it was a reasonable strategy to refrain from presenting evidence of defendant's mental health history. The State adds that defendant's mental health records were legally immaterial to the charges. The State's argument is unpersuasive.

¶ 17    First, we question whether Judge Cowlin was "intimately familiar with the lengthy history of the case"; as noted, Judge Cowlin was assigned to the case less than three months before trial, when the case had already been pending and active for nearly three years. More importantly, the State's focus on the soundness of second counsel's *trial* strategy ignores the possibility, suggested by defendant's remarks in allocution, that he received unsound advice from first or second counsel when deciding whether to accept the State's plea offer. We fail to see how Judge Cowlin could have evaluated that possibility without some inquiry of defendant and second counsel. For instance, Judge Cowlin could have asked defendant to elaborate on why he believed that his mental health records would be presented at trial and how this belief influenced his decision to reject the plea offer. Judge Cowlin could also have asked second counsel whether he or first counsel advised defendant to reject the plea offer and, if so, whether defendant's mental health was a factor in that advice. Having failed to make such inquiries, Judge Cowlin has left us with a record inadequate to evaluate whether there was possible neglect of the case, which would require the appointment of new counsel to assist defendant in presenting his ineffective-assistance claim. Accordingly, the case must be remanded so the trial court can conduct a proper inquiry per *Krankel* and its progeny.

¶ 18                                III. CONCLUSION

¶ 19    For the reasons stated, we remand the cause to the circuit court of McHenry County for the limited purpose of allowing the trial court to properly inquire into the factual basis of defendant's ineffective-assistance claim. See *People v. Moore*, 207 Ill. 2d 68, 81-82 (2003). If defendant's allegations show possible neglect of the case, the trial court should appoint new counsel to argue defendant's ineffective-assistance claim. See *id.* at 78. However, if the trial court concludes that defendant's claim lacks merit or pertains only to matters of trial strategy, the court may deny the claim. See *id.* at 81.

¶ 20    Remanded with directions.