NOTICE

Decision filed 06/05/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230217-U

NO. 5-23-0217

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 20-CF-352 |
| | ) | |
| MELVIN L. TAYLOR, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Cause remanded with directions for the trial court to conduct a hearing to address the defendant's *pro se* ineffective assistance of counsel claims, as required by *People v. Krankel*, and to determine, based on the trial court's conclusion following the hearing, whether additional proceedings are required.

¶ 2    The defendant, Melvin L. Taylor, appeals his conviction and sentence, following a jury trial in the circuit court of Jefferson County, for home invasion, armed robbery, and two counts of armed violence. For the reasons that follow, we *sua sponte* remand this cause for the limited purpose of a proper *Krankel* inquiry in the trial court. We do not reach the issues raised by the defendant, but retain jurisdiction to consider them, if necessary, following the *Krankel* inquiry. See, *e.g.*, *People v. Bell*, 2018 IL App (4th) 151016, ¶¶ 3, 36-37; see also *People v. Roberson*, 2021 IL App (3d) 190212, ¶ 22.

1

¶ 3                                    I. BACKGROUND

¶ 4      We recite only those facts necessary for an understanding of our disposition of this appeal.

On November 19, 2020, the defendant was charged, by information, with one count of home

invasion, a Class X felony; one count of armed robbery, a Class X felony; and two counts of armed

violence, Class 2 felonies. Each count was alleged under a theory of accountability. Count I, home

invasion, alleged that on November 12, 2020, the defendant, or one for whose conduct he is

accountable, knowingly and without authority entered the dwelling place of George Harrington,

knowing persons to be present, and intentionally caused injury to Amanda Albright while within

the dwelling place.[1] Count II, armed robbery, alleged that on November 12, 2020, the defendant,

or one for whose conduct he is accountable, while carrying a dangerous weapon, a baseball bat,

on or about his person, knowingly took property from the person or presence of Samantha Payne

by use of force. Count III, armed violence, alleged that on November 12, 2020, the defendant, or

one for whose conduct he is accountable, while armed with a Category III weapon, a bludgeon,

performed acts prohibited by section 12-3.05(a)(1) of the Criminal Code of 2012 (720 ILCS 5/12-

3.05(a)(1) (West 2018)) in that said defendant knowingly caused great bodily harm to Amanda

Albright in that he struck her about the body and head with a baseball bat. Count IV alleged the

same offense and conduct as in count III, but named the victim, Samantha Payne. Bail was set, and

the defendant remained in custody throughout the remainder of the criminal proceedings.

¶ 5      Beginning on October 25, 2022, and ending October 26, 2022, a jury trial was conducted

and resulted in the jury finding the defendant guilty on all counts. Subsequently, the defendant

filed two handwritten, *pro se* filings that were notarized, file-stamped by the circuit clerk, and

included in the record. The first was filed on December 16, 2022, and the second on January 9,

---

[1]Samantha Payne was originally named as an additional victim in count I, but the State moved to strike her name from count I of the information prior to the commencement of the jury trial.

2023. Each filing contained several claims against and complaints regarding his attorney's representation during and leading up to trial. The relevant portions of the defendant's December filing state as follows:

"2) Attorney did not file Motion for County to Pay for Defense Witness to get here from Asheville, North Carolina in adequate time for Trial claiming He forgot.

3) Attorney refused to give Defendant a full and complete copy of every witness on the States Witness List. To which I made a legal and Notorized [*sic*] copy of the request for full and complete copy of the Brady Memo on 9/16/2022.

4) Attorney refused to ask any questions to States witnesses that I requested that would Discredit. States witnesses showed they were basically being coerced by the State."

In the defendant's January filing, which was a letter to the court, he made the following assertions:

"Sir the State and my Attorney substituted their own agendas for those of the People. *** My Attorney neglected to mention or was limited into not mentioning that the Prime Suspect admitted to the Acts of this Crime by himself during a Phone call ***. Attorney Nathan Rowland never subpoena [*sic*] any of my witnesses and refused to properly file Motion to have witness brought in from Asheville, North Carolina concerning the video Affidavit of Amanda Albright stating I had nothing to do with this Crime!

The actions and errors of the State & Attorney Nathan Rowland were so egregious that I respectfully request that you vacate the Guilty Verdict ***."

The defendant's *pro se* filings were never addressed by the trial court, and on March 30, 2023, the defendant was sentenced to a total of 25 years in the Illinois Department of Corrections. The defendant filed a timely notice of appeal on April 5, 2023.

¶ 6                                    II. ANALYSIS

¶ 7     We first acknowledge that neither party on appeal raises or sets forth arguments that the trial court failed to conduct a preliminary *Krankel* inquiry based on the statements contained in the defendant's *pro se* filings.

> "In general, this court adheres to the long-established principle that a court of review should decide only those questions that the parties present to it. [Citations.] This court generally heeds the United States Supreme Court's admonition that a reviewing court should not 'sally forth each day looking for wrongs to right' by deciding issues that it raises *sua sponte*. (Internal quotation marks omitted.) [Citation.] However, under Illinois Supreme Court Rule 366, every Illinois reviewing court has the authority to 'enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require.' Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994). This rule grants the authority to raise and decide unbriefed issues. [Citation.] Searching the record for unbriefed reasons to reverse a circuit court's judgment is definitely not something that should normally be done. [Citation.] A reviewing court must refrain from exercising this authority when such exercise would 'have the effect of transforming [the reviewing] court's role from that of jurist to advocate.' [Citation.] Indeed, a reviewing court should exercise its authority to address unbriefed issues only where 'a clear and obvious error exists in the trial court proceedings.' [Citation.]" *Watford v. Boyd*, 2018 IL App (5th) 160468-U, ¶ 9.

¶ 8     In the instant case, the unbriefed issue concerns error that is clear upon an initial review of the record. Additionally, the issue is easy to resolve without the aid of argument and without any danger of transforming this court's role from that of a jurist to that of an advocate. Furthermore, it is important to note that the defendant's counsel on appeal asserts arguments of ineffective

4

assistance that allude to claims the defendant made in his *pro se* filings with the trial court that were never addressed. We, therefore, *sua sponte* raise and determine whether the trial court was required to conduct a preliminary *Krankel* inquiry based on the statements contained in the defendant's *pro se* filings.

¶ 9    We begin by noting our standard of review. "The issue of whether the circuit court properly conducted a preliminary *Krankel* inquiry presents a legal question"; therefore, we apply a *de novo* standard of review. *People v. Jolly*, 2014 IL 117142, ¶ 28.

¶ 10    In 1984, the Illinois Supreme Court in *Krankel* announced the manner in which the court should handle ineffective assistance of counsel posttrial claims. *People v. Krankel*, 102 Ill. 2d 181 (1984). Since that time, and in accordance therewith, a common law procedure has developed that "is triggered when a defendant raises a *** posttrial claim of ineffective assistance of trial counsel." *Jolly*, 2014 IL 117142, ¶ 29. It is well-settled law that in such situations, the trial court is not automatically required to appoint new counsel for a defendant. *Id.* "If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *** motion." *People v. Moore*, 207 Ill. 2d 68, 78 (2003). If, on the other hand, "the allegations show possible neglect of the case, new counsel should be appointed" to represent the defendant at a hearing on the defendant's claims. *Id.* This ensures that newly appointed counsel can independently evaluate the defendant's allegations, and it also avoids "the conflict of interest that trial counsel would experience if trial counsel had to justify his or her actions contrary to [the] defendant's position." *Id.*

¶ 11    To determine whether the appointment of new counsel is required, the trial court must take action. The first step is to "examine the factual basis of the defendant's claim." *Id.* at 77-78. To do this, "some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually

5

necessary in assessing what further action, if any, is warranted on a defendant's claim." *Id.* at 78. The trial court may ask the trial counsel to "simply answer questions and explain the facts and circumstances surrounding the defendant's allegations." *Id.* Further, "[a] brief discussion between the trial court and the defendant may be sufficient" to assist the trial court in understanding the defendant's allegations. *Id.* Lastly, the trial court may base its evaluation of the defendant's allegations on its own "knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *Id.* at 79.

¶ 12    The goal of a preliminary *Krankel* inquiry "is to facilitate the trial court's full consideration of" the defendant's claims. *Jolly*, 2014 IL 117142, ¶ 29. Moreover, by conducting the initial evaluation of the defendant's claims by such an inquiry, the trial court "will create the necessary record for any claims raised on appeal." *Id.* ¶ 38. Absent such a record, as in the case at bar, appellate review is precluded. *People v. Ayres*, 2017 IL 120071, ¶ 21. To ensure this goal of the preliminary *Krankel* inquiry is met, "[t]he law requires the trial court to conduct some type of inquiry into the underlying factual basis" of the ineffective assistance of counsel claims, and if no such inquiry is conducted, the cause must be remanded to the trial court for that purpose. *Moore*, 207 Ill. 2d at 79, 80. As the Illinois Supreme Court has recognized, even where a defendant's claims may ultimately be without merit, the trial court must afford "the defendant the opportunity to specify and support his complaints," and the trial court may not "precipitously and prematurely" deny the defendant's motion. (Internal quotation marks omitted.) *Id.* at 80 (quoting *People v. Robinson*, 157 Ill. 2d 68, 86 (1993)).

¶ 13    However, as in any case that is remanded for a proper preliminary *Krankel* inquiry, if, after a proper inquiry and any results that may flow from it, the trial court ultimately determines that the defendant's claims are without merit, "the court may then deny the motion and leave standing [the] defendant's convictions and sentences." *Id.* at 81. If that happens, the defendant remains able

6

to "appeal his assertion of ineffective assistance of counsel along with his other assignments of error." *Id.* at 81-82.

¶ 14 The Illinois Supreme Court has made clear that a *pro se* defendant is not required to do anything more than bring his claim to the court's attention and may do so orally or in writing. *In re Johnathan T.*, 2022 IL 127222, ¶¶ 24, 47. "[A] bare allegation of 'ineffective assistance of counsel,' without more, is sufficient to warrant a preliminary *Krankel* inquiry." *People v. Downing*, 2019 IL App (1st) 170329, ¶ 55 (citing *Ayers*, 2017 IL 120071, ¶ 24); see also, *e.g.*, *People v. Patrick*, 2011 IL 111666, ¶ 39; *People v. Munson*, 171 Ill. 2d 158, 200 (1996) (all supporting the general proposition that a defendant is not required to file any sort of specific motion, and simply a letter or note to the court will suffice, and that even if the defendant does not specifically include the words "ineffective assistance of counsel" in the defendant's filing or oral statement, the allegations can be sufficient to require a *Krankel* inquiry).

¶ 15 Here, the defendant submitted multiple *pro se* filings, each made part of the record and one specifically addressed to the court, that claimed his attorney's representation was deficient, as set forth in the facts above. Although the specific term "ineffective" is not found in the defendant's *pro se* filings, we find that the statements contained therein were sufficient to trigger the requirement that a preliminary *Krankel* inquiry be conducted, particularly when one is mindful of the fact that *Krankel* inquiries always result from *pro se* claims, and it would not be realistic to expect or require a defendant to use the precise or artful language one would require of a licensed attorney. Further, we note that the defendant has raised ineffective assistance arguments on appeal that allude to claims initially made in the defendant's *pro se* filings that were never addressed in the trial court. Pursuant to the Illinois Supreme Court's decision in *People v. Ayers*, without the trial court initially evaluating the defendant's claims in a preliminary *Krankel* inquiry and creating

the necessary record for claims raised on appeal, appellate review is precluded. *Ayers*, 2017 IL 120071, ¶ 21.

¶ 16                                     III. CONCLUSION

¶ 17      For the foregoing reasons, we remand with instructions for the trial court to conduct a hearing to address the defendant's *pro se* ineffective assistance of counsel claims, as required by *People v. Krankel*, 102 Ill. 2d 181 (1984), and to determine, based on the trial court's conclusion following the hearing, whether additional proceedings are required. We expressly retain jurisdiction to consider all of defendant's issues raised on appeal, if necessary, following the *Krankel* inquiry.

¶ 18      Cause remanded with directions.