Docket No. 107536.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

————————

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
THOMAS TAYLOR, Appellant.

*Opinion filed April 15, 2010.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Thomas, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

Justice Burke specially concurred, with opinion.

**OPINION**

Following a bench trial in the circuit court of Cook County, defendant Thomas Taylor was convicted of possession of a controlled substance with intent to deliver, a Class 2 felony. Because of two prior convictions for Class 2 or greater offenses, he was sentenced as a Class X offender and was given a sentence of seven years' imprisonment. The appellate court affirmed the conviction and sentence. No. 1–06–3061 (unpublished order under Supreme Court Rule 23). For the reasons set forth below, we affirm the judgment of the appellate court.

BACKGROUND

In September 2004 defendant was charged by information with one count of possession of less than one gram of a controlled substance–heroin–with intent to deliver, within 1,000 feet of a school (720 ILCS 570/401(d), 407(b)(2) (West 2004)), and one count of possession of less than one gram of a controlled substance–heroin–with intent to deliver (720 ILCS 570/401(d) (West 2004)). Prior to trial, defendant was in court on December 14, 2004, when his privately retained counsel sought a reduction in defendant's bond. The State objected, noting, among other things, that "defendant is [Class] X mandatory *** because he has three felonies in his background, including a robbery and a burglary." The court granted defendant's motion, reducing the bond from $60,000 to $25,000. On the next court date, January 12, 2005, defendant was present when the State informed the court that a previously tendered offer to accept a plea to a "reduced charge" had been rejected by defense counsel, and "the offer is no longer available."

Defendant's trial, which was before a different judge, took place in spring 2006. Chicago police officer L. Olivares testified that about noon on August 16, 2004, he was conducting plain-clothes surveillance outside a courtyard building when he saw two different women, on separate occasions, approach defendant outside the building and give him an unknown amount of United States currency. After defendant received the money, he would go to the building, retrieve a small object from a plastic bag in a doorway, and give the object to the woman. Olivares radioed his enforcement team, which consisted of three officers, including Officer Vincent Francone. Francone testified that when the enforcement team arrived at the scene, the other two officers detained defendant, and Francone went to a doorway in the courtyard building and recovered a plastic bag containing six individual bags. Defendant was taken into custody. Illinois State Police forensic chemist Monica Kinslow testified that she performed tests on the contents of one of the six bags, which weighed 0.094 grams, and the tests were positive for heroin.

After the State rested, defense counsel moved for a directed finding. The circuit court granted the motion as to count I, possession with intent to deliver within 1,000 feet of a school, because there was not "any testimony about a school in the area or the distance from the

alleged location to the school." The court denied the motion as to count II, possession with intent to deliver.

Stephanie Scott testified for the defense that on August 16, 2004, she went to the courtyard building at about 12:20 p.m. to meet defendant for lunch. She arrived by bus and went to find defendant, who worked for a construction company in the building. She knocked on the door, defendant emerged, and they walked around to the front of the building. As they walked, defendant gave her money to buy lunch and bring it back. As she was crossing the street to get lunch, a police car pulled up, a couple of officers jumped out and ran up to defendant, and one of them handcuffed him.

Defendant testified that on August 16, 2004, he was an independent contractor working for the J.S. Barber Construction Company in the courtyard building. Defendant denied selling cocaine or any other controlled substance on that day. According to defendant, immediately before he was arrested he was in his office in the courtyard building looking at paperwork while waiting for Scott to arrive. When she knocked on the door, he came out and they went to the front of the building. Defendant gave Scott $20 to pick up lunch, and at that point defendant saw a police car driving past, and one of the officers saw defendant handing Scott the money. After defendant gave Scott the money, she started across the street to get lunch, and defendant went to a nearby stoop, sat down and started to read a newspaper. The police car pulled up and two officers got out and walked up to defendant. One of them handcuffed him and searched him, and defendant was placed in the police car.

The circuit court found defendant guilty of possession of a controlled substance with intent to deliver, a Class 2 felony. Defendant filed a motion for a new trial, and the court denied it. At sentencing, which took place on June 27, 2006, the State noted that this was defendant's fourth felony conviction. According to the presentence investigation report, defendant was previously convicted of burglary, robbery, and possession of a controlled substance with intent to deliver. He was sentenced for the burglary and robbery convictions in 1989, and for the possession of a controlled substance conviction in 1993. It was undisputed that the burglary was a Class 2 offense and the possession with intent to deliver was a Class 1 offense. Defendant thus had at least two prior convictions for Class 2 or greater offenses.

The State noted that, under section 5–5–3(c)(8) of the Unified Code of Corrections (730 ILCS 5/5–5–3(c)(8) (West 2004)), defendant was required to be sentenced as a Class X offender, with a range of 6 to 30 years' imprisonment.[1] The State sought a sentence greater than the minimum, and defense counsel requested the minimum.

In allocution, defendant stated, in pertinent part:

"Excuse me, I'm sorry, your Honor, but I had no idea. I had no idea what I was facing. I know it was my responsibility, but I had no idea what I was facing for this type of situation.

Considering what my family is going through right now, I wouldn't [have taken] that chance. The offer that was made to me, I would [have] jumped into it with both feet if I knew that I was facing this type of situation.

I've been trying hard. I've tried hard since the last time I got out of jail. I kept the same job and stayed in the same place since I've been home, since I've been home since '95 because that almost destroyed me. I lost my first family and my kids then. And I don't want to lose my family again. I'm 41 years old. I'm fixin[g] to be 42. I can't go through this again, your Honor. I had no idea that if–I had no idea that, Mr. Taylor, if you don't take the three years[2] and you get found guilty, you're going to [get] six to 30, not that you could *** get six to 30. That you probably–that you would get six to 30.

---

[1]Section 5–5–3(c)(8) provides, in relevant part: "When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted *** of an offense that contains the same elements as an offense now classified in Illinois as a Class 2 or greater Class felony and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a Class X offender." 730 ILCS 5/5–5–3(c)(8) (West 2004).

[2]The record does not include the State's specific plea offer to defendant. However, it apparently was an offer to accept a plea of guilty to a reduced charge with a sentence of three years' imprisonment.

[There's] no way on God's earth[ ] I would [have taken] that chance knowing the situation, knowing me, and the situation with my family."

Following defendant's statement, the circuit court sentenced defendant to seven years in the custody of the Department of Corrections. In imposing sentence, the court stated it had considered the arguments in aggravation and mitigation, as well as defendant's statement. The court added it was "mindful of the rehabilitation potential of [defendant] *** the need to protect society *** [and] the presentence investigation." The court also ordered defendant to pay various fees and fines. Defense counsel filed a motion to reconsider sentence, which was denied. The court appointed appellate counsel to represent defendant.

On appeal, defendant argued that his statement at sentencing implied defense counsel was ineffective for failing to advise him about the possible penalties if he rejected the State's plea offer. According to defendant, the circuit court erred by failing to inquire into this implicit *pro se* claim of ineffective assistance, to determine whether it had potential merit and whether new defense counsel should be appointed to argue the claim. The appellate court rejected defendant's argument, concluding that even if the statement at sentencing were interpreted as a claim of ineffective assistance, the circuit court had no duty to inquire into it where, *inter alia*, defendant was represented by privately retained counsel. No. 1–06–3061 (unpublished order under Supreme Court Rule 23). The appellate court affirmed defendant's conviction and sentence. The court also ordered a modification of defendant's fines and fees order to reflect $155 in credit for time served in custody prior to sentencing. No. 1–06–3061 (unpublished order under Supreme Court Rule 23). We allowed defendant's petition for leave to appeal. 210 Ill. 2d R. 315.

### ANALYSIS

This court has previously considered the issue of whether new counsel should be appointed where a defendant brings a *pro se* posttrial motion alleging ineffective assistance of counsel. In a line of cases beginning with *People v. Krankel*, 102 Ill. 2d 181 (1984), the following rule developed. New counsel is not automatically required

in every case where a defendant brings such a motion. Instead, the trial court should first examine the factual basis of the defendant's claim. If the court determines the claim lacks merit or pertains only to matters of trial strategy, new counsel need not be appointed and the *pro se* motion may be denied. However, if the defendant's allegations show possible neglect of the case, new counsel should be appointed to argue the defendant's claim of ineffective assistance. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003) (citing cases); *People v. Munson*, 171 Ill. 2d 158, 199-200 (1996). "The appointed counsel can independently evaluate the defendant's claim and would avoid the conflict of interest that trial counsel would experience if trial counsel had to justify his or her actions contrary to defendant's position." *Moore*, 207 Ill. 2d at 78.

Defendant here argues his statement at sentencing was an "implicit" claim of ineffective assistance of counsel, and the circuit court therefore was required to conduct a *Krankel* inquiry. Defendant contends the circuit court made no such inquiry. He argues, in addition, that the appellate court erred in holding that a defendant represented by privately retained counsel is not entitled to a *Krankel* inquiry. Defendant notes that, in reaching this conclusion, the appellate court relied on this court's decision in *People v. Pecoraro*, 144 Ill. 2d 1 (1991). Defendant's arguments present questions of law, which we review *de novo*. See *Moore*, 207 Ill. 2d at 75.

We turn to the question of whether defendant's statement at sentencing constituted a *pro se* claim of ineffective assistance of counsel sufficient to trigger the circuit court's duty to conduct a *Krankel* inquiry.

We note initially that nowhere in defendant's statement at sentencing did he specifically complain about his attorney's performance, or expressly state he was claiming ineffective assistance of counsel. Defendant's characterization of his statement as an "implicit claim of ineffective assistance of counsel" is an acknowledgment of this point. Defendant nevertheless argues that his statement provided a "clear basis" for a claim of ineffective assistance. Defendant correctly notes that "a *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention." *Moore*, 207 Ill. 2d at 79. In *Moore*, this point was supported by citation to two appellate court decisions, *People v. Giles*, 261 Ill.

App. 3d 833 (1994), and *People v. Finley*, 222 Ill. App. 3d 571 (1991). It is true that, similar to defendant here, neither the defendant in *Giles* nor the defendant in *Finley* filed a conventional, written *pro se* posttrial motion alleging ineffective assistance. Instead, in each case the "claim" was included in correspondence to the trial court. In *Giles*, "[a]fter defendant's trial and before his sentencing hearing, defendant sent a letter to the trial court criticizing his counsel's performance." *Giles*, 261 Ill. App. 3d at 846. The letter included five separate bases for claiming that counsel was ineffective. Similarly, in *Finley*, following defendant's conviction, he "wrote three letters to the trial judge" providing the names of potential witnesses. *Finley*, 222 Ill. App. 3d at 576. Defendant "charged that his public defender did not attempt to contact these potential witnesses and that she 'did not represent me to the best of her ability.' " *Finley*, 222 Ill. App. 3d at 576. While neither of these "claims" was conventional, each nonetheless expressly complained about counsel's performance, unlike defendant.

The State responds that the record here fails to demonstrate a "clear basis" for any allegation of ineffective assistance of counsel, and the circuit court therefore had no duty to inquire into counsel's effectiveness. As the State correctly notes, there is nothing in defendant's statement specifically informing the court that defendant is complaining about his attorney's performance. Indeed, defendant does not mention his attorney. In addition, because of the rambling nature of defendant's statement, it is amenable to more than one interpretation. For example, according to the State, "defendant's statement merely shows regret at not accepting the more advantageous plea deal before trial, and not that he rejected the offer based upon a material misunderstanding of what sentence he faced." See *People v. Grant*, 71 Ill. 2d 551, 557-58 (1978) (rejecting argument that trial court erred in failing to give particular jury instruction, stating: "If a defendant does not articulate his theory *** he cannot reasonably expect the trial court, unaided, to divine his intent"). If defendant's statement in the case at bar were deemed sufficient to require a *Krankel* inquiry, few statements would be insufficient. We agree with the State that defendant's statement at sentencing was insufficient to require such an inquiry.

Because of our disposition of this appeal, we need not reach the

-7-

remainder of defendant's arguments, including defendant's claim that the appellate court erred in holding, pursuant to *Pecoraro*, that a defendant represented by privately retained counsel is not entitled to a *Krankel* inquiry. We express no opinion regarding that decision by the appellate court, which is irrelevant to our holding that it was defendant's statement in itself which was insufficient to require such an inquiry.

CONCLUSION

We affirm the judgment of the appellate court, but for reasons other than those set forth by that court.

*Affirmed.*

JUSTICE BURKE, specially concurring:

I agree with the majority's conclusion that defendant's statement to the circuit court was insufficient to warrant an inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). I write separately because I believe we must also address defendant's claim that the appellate court erred in holding, pursuant to *People v. Pecoraro*, 144 Ill. 2d 1 (1991), that a defendant represented by privately retained counsel is not entitled to a *Krankel* inquiry.

When interpreting *Pecoraro*, our appellate court has reached contradictory conclusions regarding the appointed counsel/private counsel issue. In *People v. Shaw*, 351 Ill. App. 3d 1087, 1092 (4th Dist. 2004), the appellate court noted that the defendant, "as in *Pecoraro*," was represented by private counsel and held, similar to the appellate court below, that a *Krankel* inquiry was not required. In *People v. Johnson*, 227 Ill. App. 3d 800, 810 (1st Dist. 1992), on the other hand, the court stated: "[W]e do not believe *Pecoraro* stands for the proposition that a trial court is free to automatically deny a *pro se* request for new counsel simply because the defense counsel who was allegedly ineffective was privately retained."

The primary reason we allowed the petition for leave to appeal in the case at bar was to resolve the conflict in our appellate court on

this issue. Yet, the majority makes no effort to do so. Instead, the majority assumes, without deciding, that *Krankel* applies to privately retained counsel since it addresses the merits of defendant's claim on a factual basis. Rather than simply assuming that *Krankel* applies to privately retained counsel, I would address the conflict in the appellate court and clarify our holding in *Pecoraro*.

In *Pecoraro*, the defendant filed posttrial motions, both *pro se* and through his counsel, alleging ineffective assistance of counsel, and the trial court denied the motions. On appeal, the defendant argued that, under *Krankel*, the trial court should have appointed other counsel to argue his motions alleging ineffective assistance. This court distinguished *Krankel* and held that it did not apply. The court stated:

> "Unlike *Krankel*, where defendant was represented by an appointed public defender at both trial and post-trial motions, defendant Pecoraro retained private counsel to represent him at trial and in post-trial motions. It was not within the trial court's rubric of authority to advise or exercise any influence or control over the selection of counsel by defendant, who was able to, and did, choose counsel on his own accord. [Citation.] Moreover, the trial judge could not force defendant to retain counsel other than that chosen by defendant. [Citation.] Defendant and his counsel were the only parties who could have altered their attorney-client relationship. Defendant could have retained other counsel to represent him prior to the hearing of his post-trial motions." *Pecoraro*, 144 Ill. 2d at 15.

We concluded, "*Krankel* is a fairly fact-specific case, and the circumstances in the case at hand, where defendant retained his own private counsel and did not request that he be represented by other counsel, do not warrant the application of *Krankel*." *Pecoraro*, 144 Ill. 2d at 15.[3]

---

[3]The dissenting justice disagreed, arguing it was "irrelevant" whether counsel was appointed or retained. "It is as equally inappropriate for *private counsel* to argue his incompetence at a post-trial hearing as it is for an appointed public defender." (Emphasis in original.) *Pecoraro*, 144 Ill. 2d at 23 (Clark, J., dissenting).

As noted above, the appellate court has reached contradictory conclusions as to how to read *Pecoraro*. To read *Pecoraro* as distinguishing between appointed and retained counsel would create a conflict with *Cuyler v. Sullivan*, 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980). In *Sullivan*, a *habeas* case, the respondent alleged ineffective assistance of counsel based on potential conflicts of interest arising from privately retained counsel's representation of multiple defendants. The petitioners argued, in response, that the alleged failings of privately retained counsel could not provide the basis for a writ of *habeas corpus*. The Court rejected this argument.

> "A proper respect for the Sixth Amendment disarms petitioner[s'] contention that defendants who retain their own lawyers are entitled to less protection than defendants for whom the State appoints counsel. We may assume with confidence that most counsel, whether retained or appointed, will protect the rights of an accused. But experience teaches that, in some cases, retained counsel will not provide adequate representation. The vital guarantee of the Sixth Amendment would stand for little if the often uninformed decision to retain a particular lawyer could reduce or forfeit the defendant's entitlement to constitutional protection. Since the State's conduct of a criminal trial itself implicates the State in the defendant's conviction, we see no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers." *Sullivan*, 446 U.S. at 344-45, 64 L. Ed. 2d at 344, 100 S. Ct. at 1716.

This holding was reaffirmed in *Mickens v. Taylor*, 535 U.S. 162, 152 L. Ed. 2d 291, 122 S. Ct. 1237 (2002), where the defendant, who was convicted of murder, alleged ineffective assistance because one of his court-appointed attorneys had a conflict of interest at trial.[4] In response to a dissenting justice's suggestion "that a trial court must scrutinize representation by appointed counsel more closely than representation by retained counsel," the Court cited *Sullivan* and stated: "But we have already rejected the notion that the Sixth

---

[4]The attorney had previously represented the murder victim.

-10-

Amendment draws such a distinction." *Mickens*, 535 U.S. at 168 n.2, 152 L. Ed. 2d at 302 n.2, 122 S. Ct. at 1242 n.2, citing *Sullivan*, 446 U.S. at 344, 64 L. Ed. 2d at 344, 100 S. Ct. at 1716.

To read *Pecoraro* as prohibiting a *Krankel* inquiry simply because counsel was retained would conflict with Supreme Court authority and would be a violation of the sixth amendment right to effective assistance of counsel. Accordingly, I would resolve the conflict in the appellate court by clarifying that *Pecoraro* does not stand for the proposition that *Krankel* only applies to appointed counsel.