NOTICE

Decision filed 11/18/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 180405-U

NO. 5-18-0405

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 12-CF-1826 |
| | ) | |
| ANTHONY MOORE JR., | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellant. | ) | Judges, presiding. |

JUSTICE WHARTON delivered the judgment of the court.
Justices Moore and Overstreet concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where the trial court did not conduct a hearing to address the defendant's *pro se* posttrial motion claims of ineffective assistance of pretrial counsel pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), we remand the case to the trial court with directions to conduct this hearing.

¶ 2    The defendant, Anthony Moore Jr., appeals both his conviction for attempted first-degree murder and his 20-year sentence to the Illinois Department of Corrections. He alleges that he was denied a fair trial because of a prosecutorial theme throughout the trial that he had left his victim lying dead in a ditch and because the State elicited testimony from police officers about how to credit accounts of interviewed witnesses. The defendant also alleges that the trial court erred in failing to inquire into his claim that he received ineffective pretrial legal assistance. For the reasons

1

stated in this order, we remand this case to the trial court with directions to conduct a hearing on the defendant's claims of ineffective assistance of pretrial counsel.

¶ 3                                          I. BACKGROUND

¶ 4     The State charged the defendant with one count of attempted murder and two counts of aggravated battery. Jasmine Bradley was the victim in all three counts. This appeal is from the defendant's second trial on these charges. In the first trial in 2013, the defendant was found guilty of both charges. On appeal to this court, we reversed and remanded for a new trial because a jury instruction misstated the law. *People v. Moore*, 2016 IL App (5th) 130466-U. We concluded that the instructional error was not harmless because "there was a singular witness to identify the perpetrator, [and] this singular witness's story changed, and there was no physical evidence presented at trial to indicate that Moore was the shooter." *Id.* ¶ 23. At the second trial, the defendant was represented by counsel at the pretrial stage but represented himself at trial. We briefly review the facts of the underlying criminal acts and the two trials.

¶ 5                                          A. First Trial

¶ 6     In the first trial, the victim, Jasmine Bradley, testified that the defendant removed her from a van being driven by Victoria Walker. Bradley testified that, after she was out of the van, the defendant shot her three times. Two witnesses confirmed that Bradley identified the defendant as the shooter shortly after the shooting—Bradley's grandmother and Lieutenant Dennis Plew of the Cahokia Police Department, who interviewed Bradley at the hospital. However, Bradley's trial testimony differed from what she had told one of these two witnesses. At the conclusion of the first trial, the jury found the defendant guilty of all counts. The trial court merged the two aggravated battery convictions into the attempted murder conviction and sentenced the defendant to 34 years in prison.

2

¶ 7                                    B. Second Trial

¶ 8      In opening statements, the prosecutor stated that the defendant treated Bradley like a "piece of garbage" and that after he shot her, the defendant "left her for dead." The State claimed that the evidence would establish that the defendant thought that Bradley was disposable.

¶ 9      In the State's case, Sergeant Tyson Melvin of the Illinois State Police testified that in December 2012, a UPS delivery truck had been robbed. Many of the items taken during this robbery were ultimately located at a house where a woman named Victoria Walker lived.

¶ 10     Bradley testified that she was 14 or 15 years of age in December 2012. The defendant lived next door to her in Cahokia. Victoria Walker also lived in the same neighborhood.

¶ 11     Bradley testified that, on the night of the shooting, she remembered being in Walker's van with Walker and the defendant. She testified that the van pulled up to a store, and that she saw a UPS truck there, to which the defendant said, "round two." In response, Walker told the defendant that he was talking too much. Then, the defendant saw a FedEx truck, and he stated: "[T]hat's the truck that I really want." Again, Walker responded that the defendant was talking too much.

¶ 12     Next, Bradley testified that after driving around in Walker's van, the three returned to Walker's home. According to Bradley, the house contained many boxes. While at Walker's home, someone phoned either the defendant or Walker to state that a news story had aired on television about a UPS robbery. Bradley stated that after the call, Walker and the defendant began arguing about "whose stuff was whose." At the end of the evening, the defendant walked Bradley to a bus stop. While walking, the defendant pulled out a gun and said to Bradley, "how would you feel or what would you do if I shot you *** in your foot or your forehead[?]"

¶ 13     Bradley further testified that later that same evening, at about 1 or 1:30 a.m., Walker picked her up at her home. The defendant was not in the van at that time. Walker drove Bradley around

3

and ultimately stopped under a highway overpass. Bradley testified that she saw the defendant standing under the overpass.

¶ 14    Bradley testified that the defendant approached Walker's van and accused Bradley of "snitching." The defendant told Bradley that he would kill her. She testified that she struggled but was ultimately removed from Walker's van. The defendant then pushed Bradley and into a ditch. Bradley stated that she heard a gunshot. She testified that the defendant shot at her. Bradley got up from the ditch, but the defendant shot at her again. Bradley testified that she felt a stinging sensation in her back and heard a ringing sound in her ears and she fell. Bradley testified that she then pretended to be dead. She stated that she heard Walker say from inside the van that "she dead."

¶ 15    Bradley further testified that she waited until the van departed and then she got up and ran home. She woke up her grandmother and told her she had been shot but did not identify the shooter. She spoke with a police officer and was then taken to the hospital, where she was treated for her injuries. While at the hospital, Bradley was shown two photo arrays of suspects. She testified that she identified a photo of the defendant and identified him as the shooter, and in the other array she identified Walker as the person who had been present at the shooting.

¶ 16    Victoria Walker testified that on the date of the shooting, she argued with the defendant, who told her that he did not want Bradley to "snitch." Walker then agreed to drive the defendant around. She dropped the defendant off under a highway overpass. Walker testified that she picked up Bradley and drove her to where the defendant was waiting under the highway overpass. The defendant approached Walker's van and physically removed Bradley from the van. Walker testified that she heard a scream and the sound of gunshots. Walker testified that she stayed in her van. The defendant returned to Walker's van carrying a gun and told her to drive around. Walker

testified that the defendant told her he had shot Bradley because "he didn't want her to tell on him about the UPS truck robbery." She testified that she dropped the defendant off at his cousin's house. Walker emphatically denied that she shot Bradley.

¶ 17    The defendant testified in his own defense in a narrative format. He testified that he was at Walker's home on the evening of December 20, 2012. He and Walker left the house to get dinner, but before they left, he observed Walker remove an object from the dresser drawer where she kept her guns. While Walker was driving, she informed the defendant that Bradley had been "running her mouth," and that she needed "to be dealt with." Walker stated: "We fixin' to kill this bitch because she—I ain't going to jail for her or you. You the one told her what you told her." He asked Walker to let him out of her van.

¶ 18    The defendant testified that later that evening, Walker saw him walking and stopped her van next to him. Bradley was in the van with Walker. The defendant testified that based upon his previous conversation with Walker, he believed he needed to protect Bradley. To protect Bradley, he feigned anger and made her exit Walker's van. He confirmed that he accused Bradley of "snitching," but he denied that he threatened to kill her. The defendant stated that he heard a gunshot and then tripped and fell onto Bradley, who was in a ditch. The defendant testified that he thought that Bradley was dead. He got back into Walker's van and the two drove off and left Bradley in the ditch.

¶ 19    At the conclusion of the trial, the jury found the defendant guilty of attempted murder, but not guilty of both counts of aggravated battery. The jury also concluded that the State failed to prove that the defendant personally discharged a firearm.

¶ 20    After his conviction, the defendant agreed to posttrial legal representation. His newly appointed attorney, Patrick Sullivan, filed a posttrial motion. The trial court denied the motion.

5

Upon the trial court's denial, the defendant angrily and with profane language addressed the court and repeatedly questioned attorney Sullivan why he had not adopted the defendant's *pro se* petition and legal memorandum. The defendant's *pro se* petition and legal memorandum included claims of ineffective assistance of pretrial counsel. The discussion was as follows:

"THE DEFENDANT: I have a motion I drew up on my own, Your Honor, that I would like to go into the record, if you don't mind.

THE COURT: Mr. Moore, we're not going to entertain your motions. You're represented by an attorney.

THE DEFENDANT: I have the right to write my own motion, too.

THE COURT: No, you don't.

THE DEFENDANT: I've got case law—

THE COURT: No, you don't.

THE DEFENDANT: —to explain how I have the right to write my own motion.

* * *

THE COURT: All right. I'm going to—I'll deny the motion for judgment of acquittal and motion for a new trial.

THE DEFENDANT: So you're not going to take into consideration my motion?

THE COURT: No. You're represented by Mr. Sullivan. So—

THE DEFENDANT: Can we get it on the record—

THE COURT: Mr. Sullivan hasn't adopted your motion. I'm not taking it up.

THE DEFENDANT: Well, can we get this on the record then?

THE COURT: You're—it's on the record right now. Your request—

THE DEFENDANT: My motion—

THE COURT: Your request to file a *pro se* motion is denied.

* * *

6

THE DEFENDANT: My motion got shit he haven't even talked about.

THE COURT: Are there any changes [to the presentence investigation report]?

THE DEFENDANT: Why he choose not to file my motion?

\* \* \*

THE DEFENDANT: \*\*\* Why you didn't adopt my motion? You see all this legitimate fuckin' arguments right here. Damn, man.

MR. SULLIVAN [(DEFENSE ATTORNEY)]: Since the defendant brings it up, Your Honor, he presented me with that motion for the first time just now during the arguments. I have not had a chance to read it in its entirety. I would be more than happy to read it. If the defendant wants to ask for a continuance, I would be more than happy to read his motion and fully consider it. And if it's well written, I would be happy to adopt it.

THE COURT: I wasn't aware of the circumstances—

THE DEFENDANT: You read this—

THE COURT: —of that.

THE DEFENDANT: —shit a fuckin' couple weeks ago. This one right here. The one that's marked the post-trial motion. I showed you this a couple weeks ago, man. So you didn't see this? You said it's something on the civil matter. All of them not criminal matters.

MR. SULLIVAN: Yes, Your Honor. The defendant did present this to me. I had a chance to review it. I think this is the same one. It looks like it's been copied or edited or something. But a lot of what the defendant has in this motion—

THE COURT: Well, here—I don't need to hear that.

MR. SULLIVAN: Okay.

THE COURT: If you want to review it and determine that you want to adopt it or incorporate it into your filings post-trial before we proceed to sentencing, then that's something I'll entertain. But I'm not—Now that you're represented, Mr. Moore, by an attorney that you asked me to appoint, I'm not going to take your *pro se* filings under consideration. You can—if Mr. Sullivan needs more time, that's between you and Mr. Sullivan. I'll give you more time.

MR. SULLIVAN: Judge, I've reviewed this. And I informed the defendant that I did not wish to adopt it. I believe it's covered by my post-trial motion. He has pulled this

7

from a stack of papers, so that's only for what I'm looking at the post-trial motion—what's marked Post-Trial Motion, 1 of 2 and 2 of 2.

THE DEFENDANT: Yeah, he haven't seen the Memorandum of Law.

MR. SULLIVAN: The Memorandum of Law I haven't read. It was just presented to me for the first time, Your Honor.

THE COURT: Well, how do you want to proceed?

* * *

MR. SULLIVAN: I do not wish to adopt them at this time."

¶ 21    At the conclusion of the above discussion regarding the defendant's *pro se* posttrial motion, the defendant decided not to request a continuance, and the trial court resumed the sentencing hearing. The court sentenced the defendant to 20 years in the Illinois Department of Corrections.

¶ 22                                II. ANALYSIS

¶ 23    On appeal, the defendant raises two issues. First, he argues that the Stated denied him his right to a fair trial because of the introduction of improper evidence and the inclusion of inflammatory argument and questioning. Second, the defendant argues that the trial court erred by failing to investigate his claim that his appointed pretrial counsel was ineffective. The State concedes the second issue. Because the case must be remanded and the outcome of the case remains uncertain until the trial court complies with this order on remand, we will not address the underlying trial-related issues.

¶ 24    In *People v. Krankel*, 102 Ill. 2d 181 (1984), the Illinois Supreme Court set forth the procedure by which a trial court should handle posttrial ineffective assistance of counsel claims. In *Krankel*, the defendant raised a *pro se* posttrial challenge to his attorney's competence at trial. *Id.* at 187-88. The parties in that case agreed that the court should appoint counsel—different from the original appointed counsel—to represent the defendant regarding his ineffective assistance

8

claim. *Id.* at 188. The supreme court remanded the case to the trial court for a new hearing on the defendant's *pro se* posttrial motion with newly appointed counsel. *Id.*

¶ 25    Subsequent court interpretation of the *Krankel* procedure has resulted in a body of law that requires more focus in the initial review of a defendant's ineffective assistance claim with the result being that the defendant is not automatically entitled to the appointment of new counsel. See, *e.g.*, *People v. Taylor*, 237 Ill. 2d 68, 75 (2010). Instead, the trial court must preliminarily examine the factual basis of the defendant's claim that counsel was ineffective. *Id.* The trial court should conduct the preliminary *Krankel* inquiry with the goal of facilitating the full consideration of the defendant's claims. *People v. Jolly*, 2014 IL 117142, ¶ 19. The trial court should examine "the facts and circumstances surrounding the allegedly ineffective representation" with the purpose of determining what "further action, if any, is warranted on a defendant's claim." *People v. Moore*, 207 Ill. 2d 68, 78 (2003). The trial court may ask the allegedly ineffective defense counsel to "answer questions and explain the facts and circumstances surrounding the defendant's allegations." *Id.* The trial court may also decide to engage in a brief discussion with the defendant to fully understand the defendant's allegations. *Id.* Finally, the trial court may base its evaluation of the defendant's allegations upon its own knowledge of defense counsel's trial performance "and the insufficiency of the defendant's allegations on their face." *Id.* at 79.

¶ 26    The trial court may deny the *pro se* posttrial motion without the appointment of counsel and without holding further proceedings if the court determines that the claim lacks merit or pertains only to matters of trial strategy. *Id.* However, if the defendant's "allegations show possible neglect of the case, new counsel should be appointed" to represent the defendant at a hearing on the defendant's ineffective assistance of counsel claims. *Id.* at 78. This process ensures that newly appointed counsel can independently evaluate the defendant's allegations and circumvent "the

9

conflict of interest that trial counsel would experience if trial counsel had to justify his or her actions" that were in conflict with positions taken by the defendant. *Id.*

¶ 27    To initiate a preliminary *Krankel* hearing, a *pro se* defendant simply needs to bring the claim to the trial court's attention. *People v. Ayres*, 2017 IL 120071, ¶ 11. The defendant does not have to file a written motion but can simply send a note or letter to the trial court or raise the issue orally. *Id.*; *People v. Bates*, 2019 IL 124143, ¶ 15.

¶ 28    The standard of review for the adequacy of a trial court's *Krankel* hearing depends upon what action, if any, the trial court takes. If the trial court expresses no opinion on the merits, then review is *de novo*, whereas if the trial court reaches a decision on the merits, the reviewing court reviews the trial court's decision pursuant to the manifestly erroneous standard. *People v. Willis*, 2016 IL App (1st) 142346, ¶ 18.

¶ 29    In this case, the defendant filed his motion on July 2, 2018, and claimed that his pretrial counsel was ineffective in three ways. First, the defendant alleged that his appointed counsel failed to issue all of the subpoenas for witnesses that the defendant wanted to testify at trial. Second, the defendant alleged that pretrial counsel allowed the loss of a t-shirt that the defendant believed was important to his defense. Finally, the defendant argued that his pretrial counsel's ineffectiveness hindered the "preparation of pertinent information not allowing for a complete defense at trial."

¶ 30    Here, the record contains the defendant's *pro se* posttrial petition and memorandum of law alleging ineffective assistance of pretrial counsel. The trial court refused to consider the *pro se* motion at the hearing because the defendant was represented by appointed posttrial counsel who had filed his own motion on the defendant's behalf. As a result, the trial court did not preliminarily or substantively address the defendant's claim that his pretrial defense counsel was ineffective. In other words, the trial court did not examine "the facts and circumstances surrounding the allegedly

10

ineffective representation" with the purpose of determining what "further action, if any, is warranted" on the defendant's claim. *Moore*, 207 Ill. 2d at 78. We agree with the defendant and the State that these claims were sufficient to trigger the need for a *Krankel* inquiry. Therefore, the case must be remanded for the trial court to do so.

¶ 31                                III. CONCLUSION

¶ 32     For the foregoing reasons, we remand this case to the St. Clair County circuit court with directions that the trial court conduct a hearing to address the defendant's *pro se* ineffective assistance of counsel claims as required by *People v. Krankel*, 102 Ill. 2d 181 (1984), and at the conclusion of the hearing to determine whether additional proceedings may be required.

¶ 33     Cause remanded with directions.