NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 180498-UB

NO. 4-18-0498

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 18, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| BENJAMIN GUSTAFSON, | ) | No. 17CF159 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Michael L. Atterberry, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) Defendant failed to make a sufficient offer of proof in order to preserve his claim that the trial court improperly excluded certain witnesses.

(2) The trial court conducted a sufficient *Krankel* inquiry.

(3) The trial court committed plain error by entering a restitution order in an amount that was not supported by any evidence. The court also committed plain error by failing to establish a method by which defendant was to satisfy the restitution obligation and a time period within which the restitution was to be satisfied.

¶ 2    Following a jury trial, defendant, Benjamin Gustafson, was found guilty of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2016)) and being an armed habitual criminal (*id.* § 24-1.7(a)). The trial court sentenced defendant to 24 years in prison. In a written order, the court also ordered defendant to pay $18,889 in restitution. Defendant appealed, arguing: (1) the trial court erred by excluding certain witnesses, (2) the court failed to

conduct a sufficient *Krankel* inquiry into his posttrial allegation of ineffective assistance of counsel, and (3) the restitution payment order was deficient because the sum imposed was not supported by any evidence, the order failed to establish a method of payment, and the order failed to set a time period within which the restitution was to be paid. On appeal, this court affirmed defendant's conviction and the amount of restitution imposed by the trial court but remanded defendant's cause for the trial court to set a deadline for defendant to satisfy the restitution obligation and to establish the manner in which he was to satisfy the obligation. *People v. Gustafson*, 2020 IL App (4th) 180498-U.

¶ 3        On May 26, 2021, the supreme court denied a petition for leave to appeal filed by defendant but directed this court to vacate our judgment in the case, reconsider in light of *People v. Birge*, 2021 IL 125644, on the issue of whether the court-ordered restitution was supported by the evidence, and determine if a different result is warranted. In accordance with the supreme court's direction, we vacate our prior judgment and reconsider the court's restitution order in light of *Birge*. After reconsideration, we vacate the trial court's restitution order and remand to the trial court for a new hearing and a determination as to the appropriate amount of restitution owed, the deadline by which defendant must satisfy the restitution obligation, and the manner in which defendant is to satisfy the obligation. We otherwise affirm defendant's conviction.

¶ 4                                    I. BACKGROUND

¶ 5        On February 16, 2017, the State charged defendant with one count of residential burglary (720 ILCS 5/19-3 (West 2016)) (count I). Later, the State amended the charges to include two counts of possession of a stolen firearm (*id.* § 24-3.8) (counts II and V), two counts of unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)) (counts III and VI), and two counts of armed habitual criminal (*id.* § 24-1.7(a)) (counts IV and VII). Counts I, II, III, and IV related to alleged

actions of defendant on October 11, 2016, while counts V, VI, and VII related to alleged actions of defendant on January 24, 2017. On December 18, 2017, following a motion by defendant, the trial court severed the charges, and the State elected to proceed to trial first on counts III and IV. The issues in the subject appeal relate solely to counts III and IV.

¶ 6        Prior to trial, the State filed a motion *in limine* requesting that several individuals listed in defendant's discovery disclosures be barred from testifying because they "were not present and had no involvement with the facts giving rise to the alleged acts on October 11, 2016." The trial court reserved ruling on the State's motion until the conclusion of the State's case-in-chief.

¶ 7        The cause proceeded to a jury trial on May 21, 2018. The State first called James Fisher as a witness. Fisher testified that on October 11, 2016, he returned home from work and found his house "in total disarray." According to Fisher, "[e]verything was laying on the floor. I turned around and there [were] things broken—and such." Fisher noticed the gun case in his bedroom had been destroyed and that the following guns that had been in the case were missing: two "12-gauge shotguns," two ".410 shotguns," two ".22 rifles," a ".22 semiautomatic handgun," a ".40 Glock handgun," and a "pump-up pellet gun." In addition to the guns from the safe, Fisher noticed that two "musket-type guns," ammunition, prescription pain pills, a jewelry box containing jewelry, currency, a coat, and other "miscellaneous" items had been taken. Fisher further testified that he was acquainted with defendant and that, on two occasions prior to October 11, 2016, defendant had been to his home to pick up firewood. According to Fisher, his home was in a remote area and "unless [a person] kn[e]w where [he] live[d] or g[o]t directions from [him]," the person would be unable to find his house.

¶ 8        The State also called Taylor Hicks as a witness. According to Hicks, she first met

- 3 -

defendant in March of 2016 and was with him on October 11, 2016. Hicks testified that, on that date, defendant, Kamden Mock, and Travis Childress came to her home. When Hicks approached the car defendant was driving, he told her to come with them "to get some guns." Hicks got in the car and defendant then drove the group to Fisher's home. According to Hicks, once the group arrived at Fisher's home, the men got out of the car and entered the house while she remained in the car and listened to the police scanner. Hicks testified that, while she waited in the car, she heard "the sound of glass breaking," and approximately five minutes later, the other three returned to the car. Hicks stated that when they returned, defendant and Childress "were both carrying guns" and Mock "was carrying a jewelry box and *** a change jar." The three placed the items in the trunk of the car and then the group left. Hicks testified defendant next drove them "to the lev[ee]" where they divided the items stolen from Fisher's home among themselves. Defendant then drove them all to Childress's home and dropped off Childress and Mock along with the items Childress had claimed. Hicks testified that defendant next drove her to her house and carried the rest of the items into her attic. A few days later, defendant returned and removed the items.

¶ 9     On cross-examination, Hicks admitted that during the events of October 11, 2016, each member of the group, including herself, was "high on methamphetamine." Hicks further testified that she had purchased methamphetamine from defendant "a couple times."

¶ 10    During the second day of trial, the State called Mock and Childress to testify. With minor differences, both men testified consistently with Hicks. Additionally, Mock testified that the three men entered Fisher's home through the garage and that, after he had explored a different part of the house, he returned to where defendant was and saw defendant "loading the guns in a bag." Childress testified that sometime after October 11, 2016, he "sawed down and handled" the shotguns they had taken from Fisher's house. On cross-examination, Childress testified that after

he altered the ".410 shotgun[s]," "Kyle Hildenbrand *** ended up with" at least one of them.

¶ 11            After Childress testified, the State rested, and the trial court conducted a hearing on the State's motion *in limine*. At the beginning of the hearing, defense counsel informed the court that he intended to call as witnesses Brianne Carlson, Jerry Coram, Andrew Adams, and Deputy Tommy Pickett. The court then asked defense counsel for an offer of proof for the potential witnesses. In response to the court's request, defense counsel commenced a protracted and vague proffer. Defense counsel informed the court the testimony would "deflect any blame or responsibility that go with [defendant]" and, instead, would implicate Kyle Hildenbrand. Although defense counsel's proffer consumes 18 pages of the report of proceedings, and despite multiple attempts by the court to clarify the proffer, defense counsel did not specify the anticipated testimony of each of the identified witnesses beyond indicating that Hildenbrand possessed guns sometime after the robbery. At one point during the hearing, defense counsel stated:

> "In other words, [defendant] is being charged with one of the guns that Kyle
> Hildenbrand was trying to get rid of—excuse me—
>
> [Andrew Adams] was trying to get rid of by way of Kyle Hildenbrand, and
> Tommy Pickett saw his way clear. So, in other words, if you understand, sir, he's—
> those—one of those guns may be a gun that [defendant] is—is charged with."

The court found "[t]he proffered testimony in the [c]ourt's judgment does not go to any issue that is relevant to this jury[,]" and granted the State's motion *in limine*.

¶ 12            Defendant testified on his own behalf. According to defendant, he did not go to Fisher's home on October 11, 2016. Defendant testified that, in September 2016, he had shown Hicks and Hildenbrand where Fisher lived while the three of them happened to be driving by Fisher's house. Defendant further testified that the only time he had seen the guns he was charged

with possessing was in late October of 2016 "at Kyle Hildenbrand's house."

¶ 13    At the conclusion of the trial, the jury found defendant guilty on counts III and IV. A presentence investigation report (PSI) was ordered, and the matter was set for sentencing.

¶ 14    On July 10, 2018, defendant filed a motion for a new trial in which he alleged, in relevant part, that "defense still believes the [trial court] erred by not allowing the defense to call 3 or 4 witnesses because the State argued that those witnesses would be irrelevant to the issues at hand."

¶ 15    A sentencing hearing was held on July 13, 2018. At the hearing, the trial court first noted that because count III merged into count IV, defendant was being sentenced on the armed habitual criminal conviction. The court next addressed defendant's motion for a new trial. After hearing argument from both parties, the court denied the motion, finding that during the offer of proof at trial, "[t]he [d]efense was unable to proffer any reasons to counter the State's argument that [the witnesses] *** didn't possess any evidence that would be relevant to any issue at this trial."

¶ 16    After ruling on defendant's motion, the trial court commenced the sentencing portion of the proceeding. At the beginning of the proceeding, the following colloquy between the court and defendant occurred:

> "THE COURT: And are you satisfied, as you sit here today, with the services your attorney has performed so far on your behalf?
>
> DEFENDANT: No, your Honor.
>
> THE COURT: And what are the reasons why you're not?
>
> DEFENDANT: Mr. Prizy [(defense counsel)] has lacked in the details of the case. I have asked him to use certain things that were in discovery that he never

used and he never questioned the witnesses about. And I feel it had a big impact on the trial, him lacking in what I thought was substantial and things that could have swayed the jury a different way.

THE COURT: Okay. And I'm interpreting what you're saying ***; that you disagreed with the strategy that your attorney chose to use in front of the jury.

DEFENDANT: Yes, your Honor.

* * *

THE COURT: Okay. The [c]ourt finds for the record that the disagreements and the unhappiness that [defendant] has suggested concerning his attorney are matters of trial strategy, which the law is very clear is the domain that the trial attorney makes the decisions. And I understand that, Mr. Gustafson, you disagree with the strategy employed by your counsel, but that does not rise to the level of deficient performance pursuant to the law of your counsel."

The State then presented evidence in aggravation; defendant did not present any evidence in mitigation. Both parties made arguments. During the State's argument, the following colloquy regarding restitution occurred:

"MR. EYLER [(ASSISTANT STATE'S ATTORNEY)]: The other thing is—and it's, again, not in the PSI because the police reports are not attached, but Mr. Prizy has this, it's already been disclosed—we're requesting restitution. Mr. Prizy has the amount for the restitution, and it's joint and several as to all defendants. All are going to be responsible for that as part of the negotiation, and this defendant should be also.

THE COURT: What is the—and what is that amount?

- 7 -

MR. EYLER: That restitution figure is $18,889.

THE COURT: And, Mr. Prizy, what is your position with regard to that amount of restitution?

MR. PRIZY: We have no position.

THE COURT: Pardon me?

MR. PRIZY: We have no position on it. I know the [c]ourt's going to order restitution of [defendant] for a certain amount."

The State presented no evidence supporting the $18,889 figure. Regarding restitution, the PSI stated:

"A Restitution Affidavit was received from the State Attorney's Office. No financial information was provided on the Restitution Affidavit. The Restitution Affidavit is included as Enclosure III.

A Victim Impact Statement was received from the State Attorney's Office and is included as Enclosure IV.

A Victim Profile Form, received from the State Attorney's Office, indicates property cost of items not recovered by police is $18,000. The victim named on the form is James E. Fisher. The Victim Profile Form is included as Enclosure V.

No additional financial information has been received from the State Attorney's Office to date."

The restitution affidavit included in the PSI is unsigned, but a handwritten comment states that information related to the loss of property was "Already Given to State's Attorney on File." In the victim impact statement, Fisher wrote that information related to the financial losses he incurred as a result of defendant's conduct was "on Restitution Sheet." The referenced victim profile form

is not signed but does indicate the property loss to Fisher was $18,000, although the form does not include any receipts, estimates, bills, or other documents to corroborate that sum. Rather, it states these documents are "in [p]olice [r]eports."

¶ 17 The court ultimately sentenced defendant to 24 years in prison followed by a four-year period of mandatory supervised release. Additionally, the court ordered defendant to pay restitution. In the court's written sentencing order, defendant was ordered to pay restitution "in the total amount of $18,889.00." In the court's written Judgment of Restitution, which was incorporated into the court's sentencing order, entitlement to the $18,889 sum was apportioned between Fisher and an insurance company. The ordered payment to Fisher was itemized as follows: $1320 for stolen cash not covered by insurance, $690 for guns and ammunition not covered by insurance, $3169 for jewelry not covered by insurance, and $1546.04 for "misc[ellaneous] stolen items" not covered by insurance. Neither the sentencing order nor the Judgment of Restitution identified the manner in which defendant was to pay restitution or the deadline by which defendant was to pay.

¶ 18 This appeal followed.

¶ 19 II. ANALYSIS

¶ 20 On appeal, defendant argues: (1) the trial court erred by excluding certain witnesses, (2) the court failed to conduct a sufficient *Krankel* inquiry into his posttrial allegation of ineffective assistance of counsel, and (3) the restitution payment order was deficient because the sum imposed was not supported by any evidence, the order failed to establish a method of payment, and the order failed to set a time period within which the restitution was to be paid.

¶ 21 A. Exclusion of Witnesses

¶ 22 Defendant first contends the trial court erred by excluding certain witnesses.

Specifically, defendant contends the court erred in granting the State's motion *in limine* barring the testimony of Andrew Adams, Jerry Coram, Brianne Carlson, and Deputy Tommy Pickett. According to defendant, these witnesses "could give evidence that would help the jury determine how Hildenbrand came into possession of the weapon(s), and the circumstances and motivation of Hildenbrand's attempts to sell them." Defendant claims this testimony "may have cast doubt on [defendant's] participation in the burglary and whether he ever possessed the weapons at all."

¶ 23    "When a defendant claims that he has not been given the opportunity to prove his case because the trial court improperly barred evidence, he must provide [the] reviewing court with an adequate offer of proof as to what the excluded evidence would have been." (Internal quotation marks omitted.) *People v. Pelo*, 404 Ill. App. 3d 839, 875, 942 N.E.2d 463, 493-94 (2010) (abrogated on other grounds by *People v. Veach*, 2017 IL 120649, 89 N.E.3d 366). The offer of proof "serves dual purposes: (1) it discloses to the court and opposing counsel the nature of the offered evidence, thus enabling the court to take appropriate action, and (2) it provides the reviewing court with an adequate record to determine whether the trial court's action was erroneous." *Id.* "Failure on the part of a defendant to make a proper offer of proof forfeits review of his challenge to the trial court's granting of a motion *in limine*." *Id.*

¶ 24    An offer of proof may be formal or informal. *Id.* When making an informal offer of proof, counsel must describe the anticipated testimony "with particularity." *Id.*

> "An offer of proof that merely summarizes the witness' testimony in a conclusory manner is inadequate. [Citation.] Neither will the unsupported speculation of counsel as to what the witness would say suffice. [Citation.] Rather, in making the offer of proof, counsel must explicitly state what the excluded testimony would reveal and may not merely allude to what might be divulged by the testimony.

- 10 -

[Citation.] The offer serves no purpose if it does not demonstrate, both to the trial court and to reviewing courts, the admissibility of the testimony which was foreclosed by the sustained objection." *People v. Andrews*, 146 Ill. 2d 413, 421, 588 N.E.2d 1126, 1131-32 (1992).

¶ 25    Here, defendant contends that defense counsel "presented the court with an offer of proof to demonstrate that the witnesses would testify that they received the weapons at issue in this case from a third party." While this may have been defense counsel's goal, his proffer was clearly deficient. At trial, defense counsel attempted to proffer the proposed testimony of Adams, Coram, Carlson, and Deputy Pickett in an informal offer of proof. Although the exchange between defense counsel and the court spans 18 pages of the report of proceedings, at no point did defense counsel "explicitly state what the excluded testimony would reveal." See *id.* Defense counsel failed to identify *each* witness's *specific* proposed testimony. Instead, counsel mostly lumped the witnesses together in his proffer and generically, and oftentimes confusingly, described the substance of their proposed testimony. Contrary to defendant's assertion, it is not clear from defense counsel's proffer whether the witnesses would testify that the gun or guns defendant claims were "received" by the excluded witnesses were the same ones that had been stolen from Fisher, nor is it clear who the "third party" who delivered the guns to the witnesses was. Defense counsel, in his proffer, did not even mention Coram or his proposed testimony. Absent an adequate offer of proof, we are unable to discern from the record the substance of the excluded witnesses' testimony, let alone make a determination as to its admissibility. Accordingly, defendant has forfeited review of his claim that the court erred in excluding these witnesses.

¶ 26    Even assuming, *arguendo*, that defendant's offer of proof for Adams, Carlson, and Deputy Pickett demonstrated "that the witnesses would testify that they received the weapons at

issue in this case from a third party[,]" we would still find their testimony was properly excluded as being irrelevant. Defense counsel indicated Carlson would testify that on November 14, 2016, "Hildenbrand had [a handgun], showed it to her, she held it, and then she saw where the serial markings were. They were smudged out, most of them. And she gave it back to him and said, 'This gun is stolen. I'm not interested.' " Carlson "d[id]n't know anything" about where the gun came from or how Hildenbrand had obtained it. Defendant expected Adams to testify that in January 2017 he "had a particular .410 sawed-off shotgun" and "[Hildenbrand] possessed [certain weapons] after he got [them] from [Adams]." Defendant anticipated Deputy Pickett to testify he had arrested Adams and "recovered a weapon."

¶ 27 We find that the testimony discernible from defense counsel's offer of proof was irrelevant and, therefore, properly excluded. See Ill. R. Evid. 402 (eff. Jan. 1, 2011) ("Evidence which is not relevant is not admissible."). Whether Adams or Hildenbrand possessed a gun in November of 2016 or January of 2017 is irrelevant unless it could be established that the weapon was one of the guns stolen from Fisher's house and the weapon was never possessed by defendant. Defense counsel did not indicate the witnesses could establish either of these points. The offer of proof established only that witnesses would testify Hildenbrand possessed a handgun with missing serial numbers on November 14, 2016, and another gun in January of 2017. Defense counsel admitted Carlson could not testify that the handgun in Hildenbrand's possession was one of the guns stolen from Fisher, nor did she know where Hildenbrand had obtained the handgun. Even if we interpreted defense counsel's proffer as suggesting one of the witnesses would testify that the gun Hildenbrand and Adams possessed in January of 2017 was one of the altered ".410 shotguns" described by Childress, the testimony still would not establish that defendant did not possess the shotgun on October 11, 2016.

¶ 28                    B. Failure to Conduct a Sufficient *Krankel* Hearing

¶ 29          Defendant next contends the trial court failed to conduct a sufficient *Krankel* hearing into his *pro se* claim of ineffective assistance of counsel. We review *de novo* the manner in which a trial court conducted a *Krankel* hearing. *In re T.R.*, 2019 IL App (4th) 190529, ¶ 81, 146 N.E.3d 692. "However, when a trial court has properly conducted a *Krankel* hearing, this court will review the trial court's determination that a defendant's claim does not demonstrate a possible neglect of the case by asking if that decision is manifestly erroneous." *People v. Lawson*, 2019 IL App (4th) 180452, ¶ 43, 139 N.E.3d 663.

¶ 30          "The sole question in a *Krankel* inquiry is whether to appoint independent counsel to represent the defendant on his *pro se* ineffective assistance claims." *People v. Rhodes*, 2019 IL App (4th) 160917, ¶ 12, 128 N.E.3d 1100. "However, the trial court is not required to automatically appoint new counsel when a defendant raises such a claim." *People v. Ayres*, 2017 IL 120071, ¶ 11, 88 N.E.3d 732. Rather, the court must conduct a preliminary inquiry "to ascertain the underlying factual basis for the ineffective assistance claim and to afford a defendant an opportunity to explain and support his claim." *Id.* ¶ 24.

> "If the court determines the claim lacks merit or pertains only to matters of trial strategy, new counsel need not be appointed and the *pro se* motion may be denied. However, if the defendant's allegations show possible neglect of the case, new counsel should be appointed to argue the defendant's claim of ineffective assistance." *People v. Taylor*, 237 Ill. 2d 68, 75, 927 N.E.2d 1172, 1175-76 (2010).

¶ 31          In the present case, defendant contends his *pro se* allegation of ineffective assistance was "an allegation that his attorney was unfamiliar with the details of the case and failed to cross-examine witnesses on those details," thus demonstrating possible neglect of defendant's

case. This argument is belied by the record. Although defendant initially seemed to allege that defense counsel had been unfamiliar with defendant's case, he clarified his allegation by stating he had "asked [defense counsel] to use certain things that were in the discovery that he never used and he never questioned the witnesses about." Thus, defendant did not assert counsel was uninformed but, rather, that he was unhappy with defense counsel's choice not to use certain evidence or to ask witnesses certain questions. Although defendant may not have agreed with defense counsel's decisions regarding what evidence to present and what questions to ask certain witnesses, they were nonetheless defense counsel's decisions to make as a matter of trial strategy and, under these circumstances, his decisions do not support a claim of ineffective assistance of counsel. See *People v. Reid*, 179 Ill. 2d 297, 310, 688 N.E.2d 1156, 1162 (1997) ("Decisions concerning which witnesses to call at trial and what evidence to present on defendant's behalf ultimately rest with trial counsel. [Citation.] As matters of trial strategy, such decisions are generally immune from claims of ineffective assistance of counsel."). Accordingly, defendant's *pro se* allegation of ineffective assistance of counsel did not demonstrate possible neglect of defendant's case, and we find the trial court's *Krankel* inquiry was sufficient.

¶ 32                                    C. Restitution Payment

¶ 33        Defendant's final contention on appeal is that the restitution payment order was deficient because the sum imposed was not supported by any evidence, the order failed to establish a method of payment, and the order failed to set a time period within which the restitution was to be paid. Although defendant concedes this issue was not preserved for appeal, he nonetheless asserts this court may review it under the plain-error doctrine. We find that plain error occurred and that defendant's cause must be remanded for a new hearing on restitution.

¶ 34        A forfeited claim may only be reviewed under the plain-error doctrine if the

- 14 -

defendant first establishes that a "clear or obvious error occurred." *People v. Hillier*, 237 Ill. 2d 539, 545, 931 N.E.2d 1184, 1187 (2010). "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.* "In plain-error review, the burden of persuasion rests with the defendant." *People v. Thompson*, 238 Ill. 2d 598, 613, 939 N.E.2d 403, 413 (2010). Here, defendant alleges that plain error is applicable because the trial court's error denied him a fair sentencing hearing. Accordingly, our review is limited to the second prong of the plain-error analysis.

¶ 35 "Generally, a trial court's determination on restitution will not be reversed absent an abuse of discretion." *People v. Ford*, 2016 IL App (3d) 130650, ¶ 26, 49 N.E.3d 954. However, "[w]hether the trial court complied with *** applicable statutory procedure is a question of law, and the standard of review is *de novo*." *People v. Luczak*, 374 Ill. App. 3d 172, 185, 869 N.E.2d 1185, 1196 (2007).

¶ 36                    1. The Trial Court Committed
                Plain Error in Imposing $18,889 in Restitution

¶ 37 "As a component of the sentence, a trial court may order a defendant to pay restitution for an economic loss caused by his criminal conduct." *Birge*, 2021 IL 125644, ¶ 47 (citing 730 ILCS 5/5-5-6(a) (West 2014)). To that end, section 5-5-6(b) of the Unified Code of Corrections (Code) provides:

> "In fixing the amount of restitution to be paid in cash, *** the court shall assess the
> actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim
> named in the charge and any other victims who may also have also suffered out-of-
> pocket expenses, losses, damages, and injuries proximately caused by the same

criminal conduct of the defendant ***." 730 ILCS 5/5-5-6(b) (West 2016).

As the supreme court determined in *Birge*, this statute requires that the trial court "evaluate the actual costs incurred by the victim." *Birge*, 2021 IL 125644, ¶ 48. The court "cannot rely on conjecture or speculation as to the amount to be awarded." *Id.* "To satisfy the requirement, then, the trial court must receive sufficient information to evaluate the accuracy of the victim's restitution claim." *Id.*

¶ 38        The *Birge* court concluded that a trial court commits second-prong plain error where it fails to "determine the amount of restitution based on such factors as 'actual out-of-pocket expenses, losses, [and] damages.' " *Id.* ¶ 53 (quoting 730 ILCS 5/5-5-6(b) (West 2014)). The court reasoned that " '[p]lain-error review is appropriate because imposing [restitution] without any evidentiary support in contravention of the statute implicates the right to a fair sentencing hearing' " and " '[t]he integrity of the judicial process is also affected when a decision is not based on applicable standards and evidence, but appears arbitrary.' " *Id.* ¶ 52 (quoting *People v. Lewis*, 234 Ill. 2d 32, 48, 912 N.E.2d 1220, 1230 (2009)). Such was the case here. There is no evidence in the record explaining how the court arrived at the $18,889 figure. Although the victim profile form included in the PSI states the cost of Fisher's items not recovered by police was $18,000, the form is unsigned and there are no receipts, estimates, bills, or other documents included in the form or elsewhere in the record validating that sum. Indeed, even assuming, *arguendo*, that the $18,000 figure was accurate, the record is devoid of any evidence explaining the discrepancy between that sum and the court's $18,889 restitution order. Nor could it be argued that defendant stipulated to the amount of restitution. When asked to comment on the amount of restitution requested by the State, defense counsel did not concur in the sum but only indicated defendant had "no position on it." Such a vague statement cannot be construed as an expression of defendant's

agreement to the amount of restitution. See *People v. Nelson*, 2013 IL App (3d) 110581, ¶ 13, 987 N.E.2d 1047 ("[T]o be enforceable, a stipulation must be clear, certain, and definite in its material provisions. *** We can only find a stipulation where it is clear that both parties intended to stipulate to a fact.").

¶ 39　　　In imposing restitution here, the trial court failed to evaluate the actual costs incurred by the victim and instead apparently accepted the amount of loss declared by the State. Because the record contains no evidence supporting the court's calculation of the restitution owed, the court committed plain error in ordering defendant to pay $18,889. Therefore, we vacate the restitution order imposed by the court and remand for a new hearing where, if the State wishes to pursue restitution, the court shall determine the proper amount owed.

¶ 40　　　　　　2. The Trial Court Erred by Failing to Establish a
Method of Payment for the Restitution Obligation and Failing to Set a
Time Period Within Which the Restitution Was to Be Satisfied

¶ 41　　　Section 5-5-6(f) of the Code states, "[T]he court shall determine whether restitution shall be paid in a single payment or in installments, and shall fix a period of time not in excess of 5 years, *** within which payment of restitution is to be paid in full." 730 ILCS 5/5-5-6(f) (West 2016). The trial court's compliance with section 5-5-6(f) of the Code is mandatory. *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 82, 129 N.E.3d 755.

¶ 42　　　Defendant asserts, and the State concedes, that the trial court erred by failing to indicate in the record whether defendant was required to pay the restitution in a single payment or in installments and by failing to set a deadline for the payment, as required by Section 5-5-6(f) of the Code. We agree. For this reason, on remand, if the State wishes to pursue restitution, the trial court must also set a deadline for defendant to satisfy the restitution obligation and establish the manner in which defendant is to satisfy the obligation, as required by the Code.

¶ 43 We note that, as an alternative to his plain error argument, defendant also contends defense counsel rendered ineffective assistance by failing to object to the defects in the restitution payment order. In light of our determination that the trial court's restitution order must be vacated, we decline to address this argument.

¶ 44 III. CONCLUSION

¶ 45 For the reasons stated, we affirm the trial court's judgment in part, vacate the court's judgment in part, and remand with directions.

¶ 46 Affirmed in part and vacated in part.

¶ 47 Cause remanded.